# Wheeling.

## BANTZ & CO. v. BASNETT.

1878.
Special Term.

(Absent, HAYMOND, JUDGE.)

Decided November 8, 1877.

T. S. B. & Co., as assignees of H., bring an action of debt on a *non-negotiable* promissory note against B., for $1,000.00, and B. pleads payment to H. before notice of assignment, and with his plea files a statement of the payment, viz: Cash paid to H., March 29, 1861, $550.00; an account on Hiram Haymond, $50.00, and a note of said B., dated March 29, 1861, for $408.00, aggregating $1,008.00; and to sustain his plea, B. gives in evidence the following receipt: "Received of P. S. Basnett, $550.00 in cash, and $50.00, which Hiram Haymond owes said Basnett, which I settle for him, and the note of said Basnett for $408.00, of even date, due at four months. The whole of the above is in extinguishment of a note of $1,000.00 given to me by said Basnett, which said note will be due on the 1st April; and I further agree to return said Basnett his said note at an early day."

"J. H. HAYMOND.

"*Fairmont, March 29, 1861.*"

B. proved by himself and another, the making of said receipt by H. and the agreement of H. to surrender the $1,000.00 note to B. as soon as he could get it from Baltimore, where he had left it with other papers, but he never surrendered it and B. was not notified that it had been assigned to T. S. B. & Co. Upon the trial, the court instructed the jury, "That the execution and delivery of the promissory note for $408.00, mentioned in the pleas and evidence, was not a payment upon the said $1,000.00 note; and that unless the jury should believe from the evidence that the defendant had paid

the said note of $408.00 prior to his receiving notice or knowl-
edge that said $1,000.00 note had been assigned, they should ——————
find for the plaintiffs for so much or such part of the said
$1.000.00 note as remained unpaid at the time when defend-
ant received notice or knowledge of the assignment of the said
$1,000.00 note." HELD :

1. When the record does not show what was the ruling of
   the court below upon a demurrer. the Appellate Court
   will consider that the demurrer was overruled.

2. The instruction as given by the court was calculated to mis-
   lead the jury and therefore erroneous.

3. Where *before* a note is due, a part of the debt is paid, and a
   new note executed for the residue, by the debtor, and an
   express agreement made between the parties that the old
   note shall be surrendered, such agreement is founded
   upon valuable consideration, and extinguishes the old
   note, and no suit can be maintained thereon.

4. *Quære*—Would the case be changed, were the payment, new
   note and agreement made, *after* the old note became due?

*Supersedeas* to a judgment of the circuit court of
Marion county, rendered on the 30th day of April, 1874,
in an action in debt, in which Theodore S. Bantz & Co.,
suing as assignees of Jonathan H. Haymond, were plain-
tiffs, and Philip S. Basnett was defendant, allowed upon
the petition of said defendant.

Hon. C. S. Lewis, late Judge of the second judicial
circuit, rendered the judgment complained of.

MOORE, JUDGE, furnishes the following statement of
the case :

The plaintiffs as assignees of Jonathan H. Haymond
brought an action of debt in the circuit court of Marion
county against the defendant, Basnett, to recover the
amount of a certain promissory note, made by said Basnett,
payable six months after date, to the order of J. H. Hay-
mond, for the sum of $1,000.00, dated October 1st, 1860 ;
the said plaintiffs claiming to be the assignees of said note
by assignment from said Haymond. The defendant
demurred to the declaration, and pleaded payment to the

said Haymond of the said note, before its maturity and before notice to him of its assignment to said plaintiffs; and issue being joined a trial was had before the said circuit court by jury. The verdict of the jury was against defendant in favor of plaintiffs, $408.00, and interest $310.80, aggregating the sum of $718.80, of which sum the plaintiffs remitted $8.00, and the court after overruling the defendant's motion to set aside the verdict of the jury, gave judgment for the plaintiffs against the defendant for the residue, viz: for the sum of $710.80, with interest thereon from April 20th, 1874, until paid, and costs.

Upon the trial the deposition of Theodore S. Bantz, one of the plaintiffs, and senior partner of T. S. Bantz & Co., was introduced, to the reading of which as evidence the defendant objected, because it did not appear that notice of the taking thereof was served on the defendant. And he further excepted to the reading of said deposition, or so much thereof as relates to any communications made through Jonathan H. Haymond to said Theodore Bantz & Co., tending to charge said defendant with notice of the assignment of the note mentioned and sued on. The court directed the jury to disregard so much of said deposition as consists of, or relates to communications made through Jonathan H. Haymond to said Theodore S. Bantz & Co., tending to charge said defendant with notice of the assignment of the $1,000.00 note mentioned in the declaration, and on which this suit was brought.

The other part of the deposition was substantially as follows: Witness first saw the note of $1,000.00 in their store, in Baltimore, to the best of his recollection, "in the fall or winter of 1860, or probably the first part of 1861; J. H. Haymond was in the store of Theodore S. Bantz & Co., at the time, and exhibited the note" to witness. Haymond was largely indebted to them at the time for money loaned him by the firm, and he proposed to assign the note of P. S. Basnett for $1,000.00

to the firm as part payment of his indebtness to the firm ;

T. S. Bantz & Co., agreed to take the note, and gave Haymond credit for the amount on his account. Since that time the note had never been in Haymond's possession. The note was sent to the Fairmont bank, for collection February 13, 1861 ; and was there March 29, 1861, as the property of Theodore S. Bantz & Co. The firm had not received the amount of said note from Basnett, nor from any other person, except the following sums, to-wit :

1861.

May 20.—Received................................................................$150.00

Discount off 10 per cent. depreciated currency..................$15.00

$135.00

1862.

March 5.—Received..............................................................$70.00

$205.00

A note or postscript to a letter addressed to the cashier of the Fairmont bank by the said firm, of April 1, 1874, states, "The proposition is to pay cash $600.00 to you, note at four months, drawn by P. S. Basnett, endorsed, by J. H. Haymond, which was sent us dated March 29, 1861, for $408.00 being interest included."

The note was not paid to the bank. The plaintiff gave in evidence the said $1,000.00 note, endorsed by said Haymond.

The defendant on his part introduced the deposition of William P. Thompson, who substantially testified that he was acquainted with both Haymond and Basnett, and was their counsel in almost all their legal business ; that the receipt of J. H. Haymond to said Basnett, filed with the defendant's plea, was in his (said witness's), handwriting, and was signed by Haymond in his presence at witness's office in Fairmont, and was as it states, in settlement of a note previously given by Basnett to Haymond ; witness prepared all the papers in reference to the settlement; before these papers were completed, Basnett wanted the original note; and witness's im-

pression is, Haymond left the office for the purpose of getting the original note; after some time he returned without it, stating that he had left it along with other papers, in Baltimore, and would get and bring it out and leave it with witness for Basnett; he did not leave the original note with witness after that.

Basnett had that settlement with Haymond in the usual course of business. As to how much of the original note was settled in money, what was the amount of the new note mentioned in the receipt, and when due, witness could only speak as the receipt shows; his recollection is, that he counted the money, prepared the note, and then wrote said receipt to correspond with the facts, but cannot at this late day recall the amount of cash paid, the amount of the new note, or when it was due, nor has he any knowledge whether the new note was paid or not. Why witness inserted in the receipt that the said note was in Baltimore, meaning the original note, and then erased the same, witness's impression was that, Haymond was in doubt whether the original note was in Fairmont among his papers, or in Baltimore, but could give no other explanation why those words were inserted and then erased, &c. The defendant testified in his own behalf, that he settled said promissory note of $1,000.00 with Jonathan H. Haymond, the original holder thereof, at Fairmont, the place of residence of said Haymond, before he had notice or knowledge that the said promissory note had been assigned; that said settlement was made in the law office of William P. Thompson, on the day of the date of the receipt filed with the pleas in this case and referred to in the deposition of William P. Thompson; that at said time said Haymond proposed to surrender said promissory note of $1,000.00 to defendant, and defendant demanded that it be surrendered to him, and said Haymond made search for the said note among his papers in his office at that time for the purpose of surrendering it to defendant, but failed to find it, and agreed with defendant thereupon that said prom-

issory note should be surrendered to defendant as soon as he, the said Haymond, could find it, or at any early day, said Haymond finally saying that he had probably left said note in Baltimore with some other papers which he had left there.

And the defendant further testified that he had never seen the said promissory note of $408.00, mentioned in said receipt, since the execution of said last-mentioned note, and does not know who holds the same; that said Haymond left this country in a very short time after said note of $408.00 was given, and has never since returned; that defendant has never paid anything on said $408.00 note since its execution, nor had any transaction with said Haymond, but that he considered said $408.00 paid by reason of claims which he had against said Haymond at the time said note was executed, bnt which claims had not been settled because of the absence of said Haymond, and the amount of said claims the defendant did not state.

And the defendant also gave in evidence the receipt above referred to, dated on said 29th day of March, 1861, signed by J. H. Haymond, whose signature was admitted to be genuine, which receipt is in these words:

"Received of P. S. Basnett, $500.50 in cash, and $50.00 which Hiram Haymond owes said Basnett, which I settle for him, and the note of said Basnett for $408.00, of even date, due at four months. The whole of the above is in extinguishment of a note of $1,000.00 given to me by said Basnett, which said note will be due on 1st April; and I further agree to return said Basnett his said note at an early day.

"J. H. HAYMOND.

"*Fairmont, March* 29, 1861."

And this was all the evidence for the defendant.

And thereupon the court instructed the jury:

1st. That if they believed from the evidence that the defendant had paid the promissory note of $1.000.00, upon which said suit was brought, to Jonathan H. Hay-

mond, before notice of the assignment thereof, that they should find for the defendant; and also instructed the jury:

2d. That the execution and delivery of the promissory note for $408.00, mentioned in the pleas and evidence, was not a payment upon the said $1,000.00 note; and that unless the jury should believe from the evidence that the defendant had paid the said note of $408.00 prior to his receiving notice or knowledge that said $1,000.00 note had been assigned, they should find for the plaintiffs for so much or such part of the said $1,000.00 note as remained unpaid at the time when defendant received notice or knowledge of the assignment of the said $1,000.00 note."

And to the said second instruction of the court the defendant, by his attorney, then and there excepted.

*James Morrow, Jr.,* for plaintiff in error, relied upon the following authorities :

2 Tuck. Com. 268; 14 Gratt. 12, 13, 14; *Id.* 44-5; 15 Gratt. 99; 3 Russ. 1; 16 Vt. 358; 26 Ind. 201; 2 Wash. 233; 9 Gratt. 402; 6 Metc. 7; White and Tudor Lead. Cas. in Eq. (4 Am. ed.) vol. 2, pt. 2, p. 1533.

*A. B. Fleming,* for defendant in error, cited the following authorities :

1 Rob. 265-6; 2 Tuck. Com. (3d. ed.) 25, 26; 3 Ch. Pl. (8 Am. ed.) 926, note 3; Code 1860, ch. 144, §14, p. 630; Code 1868, ch. 100, §14, p. 538; 1 Rob. 591.

MOORE, JUDGE :

The plaintiff in error, Basnett, assigns that: "It was error to proceed to a trial of the case and to render judgment therein against the defendant, without first disposing of the demurrer to the plaintiff's declaration."

Syllabus 1        It is a well established rule that when the record does not show what was the ruling of the court below upon

demurrer, the Appellate Court will consider that the demurrer was overruled.

The second assignment of error is: That the court should have sustained the demurrer.

No reasons have been given showing error in the declaration, and no error being apparent, I consider the declaration sufficient in law and that the demurrer should have been overruled.

As to the third assignment of error that the court erred in giving the second instruction to the jury, viz: " That the execution and delivery of the promissory note for $408.00, mentioned in the pleas and evidence, was not a payment upon the said $1,000.00 note, and that unless the jury should believe from the evidence that the defendant had paid the said note of $408.00, prior to his receiving notice or knowledge that said $1,000.00 note had been assigned, they should find for the plaintiffs for so much or such part of the said $1,000.00 note as remained unpaid at the time when defendant received notice or knowledge of the assignment of the said $1,000.00 note," The exception is well taken.

The 14th sec. of chap. 144 of Code of 1860, declares: " The assignee of any bond, note or writing *not negotiable,* may maintain thereupon any action in his own name which the original obligee or payee might have brought, *but shall allow all just discounts, not only against himself, but against the assignor, before the defendant had notice of the assignment.* " That section " applies only to writings *not negotiable,* and the note in this case was not negotiable; and its only effect is to authorize the assignee of such writings to sue at law in his own name. The legal title still remains in the assignor, in whose name the suit at law *may* be brought. " (Opinion of Moncure, J., in *Davis* v. *Miller,* &c., 14 Gratt. 13). " The assignee acquires only an equitable right with a capacity, expressly given him by statute, to assert it at law in his own name. But the legal title still remaining in the obligee or payee, a right of action is incident thereto; and the

1877.
Special Term.

Bautz & Co.
v.
Basnett.

assignee may, at his election, sue at law in his own name'
or in that of the obligee or payee for his benefit. (*Mon-
cure*, J., in *Clarksons* v. *Doddridge et al.* 14 Gratt. 44).
The assignee of *choses* in action not negotiable, takes an
equitable interest only, and until notice, he has no equity
against the debtor which can be recognized and protected
by a court of law or equity. Notice of the assignment
must be given to the debtor by the assignee to prevent
him from making payment to the assignor, and until he
receives notice of the assignment, the debtor may safely
make payments to the original creditor. *Davis* v. *Miller*,
14 Gratt. 12, 13.

Bouvier, in his Law Dictionary defines *payment* thus :
" That which is given to execute what has been promised;
or it is the fulfillment of a promise. *Solvere dicimus
cum quis fecit, quod facere promisit.* But though this is
the general acceptation of the word, yet by payment is
understood every way by which the creditor is satisfied
or ought to be, and the debtor liberated : for example,
an accord and satisfaction will operate as a payment, "
&c.

In *Huffman* v. *Walker*, 26 Gratt. 316, the court held :
" Payment of a debt is not necessarily a *payment of money;*
but that is payment which the parties contract shall be
accepted as payment."

In *Poole & Co.* v. *Rice,* 9 W. Va. 73, the court held :
"A note will not be regarded as an absolute payment or
extinguishment of a precedent debt, *unless it be so expressly
agreed*—whether the note received was that of one pre-
viously bound, or of a stranger; and it will not be so
regarded, even when *so expressly received,* if such agree-
ment was procured by fraudulent concealments and rep-
resentations."

In *Dunlap's ex'ors &c.* v. *Shanklin's ex'or,* &c., 10 W.
Va. the court held: "Taking a note from the debtor, or a
note of a third party, is no discharge of the debt, *unless
it is expressly agreed between the creditor and debtor that it
is in absolute payment thereof."* 2 Greenl. Ev. secs. 516,

519, 520, 521, and authorities cited, and 2 Parsons on Contracts, pp. 624, 684, &c.

From these authorities, and many others that might be cited, it seems to me the position assumed by the plaintiff in error, in the argument of this case, is tenable, "that the debtor, before notice of the assignment may, by contract with his creditors, thoroughly modify the legal relation subsisting between them, or may enter into a new and different contract, which shall by *express words*, constitute an *extinguishment* of the subsisting contract." The assignee should be diligent in giving notice to the debtor, that he might know his real creditor; for without such notice, the debtor has every reason to consider the payee still his creditor, and any payment made to the payee, or new contract expressly entered into between them in extinguishment of the note, before notice of the assignment, is in contemplation of law a payment of the note, and the assignee cannot recover upon it as against the payee, if the defendant pleads payment, and files with his plea an account showing the nature of the payment relied upon, as was done in this instance. *Hoffman* v. *Walker*, 26 Gratt. 316-17.

The assignee in this case stood in the shoes of Haymond. Had Haymond sued on the $1,000.00 note, there can be no doubt that the defendant, the plaintiff in error, could have defeated his action by reason of the settlement evidenced by the receipt of March 29, 1861, if true, and that too by the plea of payment, certainly the assignee would be in no better condition, unless the payee had notice of the assignment before said settlement. Hence we see there are instances where a new note may be a payment, and that our own Court has so held.

The instruction was calculated to mislead the jury, and should not have been given, because, whether the new note was intended as payment or not, is a question of fact for the jury. 2 Greenl. Ev. §521, and note 4. And the court should not have usurped the province of the jury by instructing it that the new note was not a

payment. I am therefore of opinion that the verdict should have been set aside and a new trial awarded. The judgment should be reversed with costs, and the case remanded to the circuit court for a new trial to be had therein.

JOHNSON, JUDGE,

I find myself unable to agree with the reasoning of my brother Moore, who prepared the opinion in this case on the subject of *payment* in something else than money. I did concur in the conclusion arrived at that the verdict in this case ought to be set aside and the case remanded for a new trial. I propose to review the authorities upon the subject of payment by other modes than by money, and find I have undertaken a very difficult task, as the authorities are so numerous and in much confusion.

*1st. As to payment by check or negotiable note, either of the debtor or a third party*:

In *Thatcher* v. *Dinsmore*, 5 Mass. 299, it was held that a negotiable note given in consideration of a simple contract debt due is a discharge of the simple contract. Parsons, C. J., said, "it has long been settled as law in this State, that a negotiable note given in consideration of a simple contract debt due is a discharge of the simple contract, * * *. The reason of the decision is that the defendant might not be held to pay the money twice, for if the administrator could recover, the defendant might afterwards be obliged to pay the note to an endorser ignorant of the consideration. It was therefore determined that the law will presume a negotiable note is agreed by the parties to be payment of the simple contract. This case does not indeed decide that the plaintiff may not encounter the presumption by proving an express agreement that the note should be received as a collateral security." *Butts* v. *Deane*, 2 Metc. 76.

In *Mancely* v. *McGee*, 6 Mass. 143, Parsons, C. J., said: "At common law a promissory note given by his debtor to pay to his creditor a subsisting debt, is no dis-

charge of the debt; but that the creditor may either have his remedy on the note or may recover the debt; but in this State, the rule is confined to notes not negotiable." He then approves *Thatcher* v. *Dinsmore*, *supra*.

In *Melledge* v. *The Boston Iron Co.*, 5 Cush. 169, Shaw, C. J., said: "It is true that it has long been held as the law of Massachusetts that when the party bound to the payment of a simple contract debt, gives his own promissory negotiable note for it, the law presumes such note to have been accepted in satisfaction and discharge of the pre-existing debt, because the party receiving it relinquishes no security, but has the same responsibility for payment which he had before, with more direct and unequivocal evidence of the debt and a more simple remedy for recovering it, and with power also by endorsement to transfer the whole interest in it to another. There seems therefore to be no motive for retaining and keeping alive the original debt.

But the presumption that a negotiable note is satisfaction of a pre-existent debt, and not as collateral security, is a presumption of fact only, and may be rebutted and controlled by evidence that such was not the intention of the parties; so that when the promissory note given is not the obligation of all of the parties who are liable for the simple contract debt, and *a fortiori* when the note is that of a third person, and if held to be in satisfaction, would wholly discharge the liability of the party previously liable, the presumption, if it exist at all, is of much less weight; and it is a question of fact on the evidence, whether the promissory note given on the one hand and accepted on the other, was in satisfaction and discharge of the original debt." In that case, goods had been sold to a carpenter, and the declaration was in *assumpsit*, with the common counts, and special counts on the notes executed for the defendant for the price of the goods sold. The plaintiff recovered. In *Witherby* v. *Mann*, 11 Johns. 516, it was held that

where a negotiable note has been received expressly in satisfaction of a judgment, it is an extinguishment of the judgment debt."

*Spear & Patton* v. *Atkinson et al.*, 1 Ired. 262, was an action for goods sold and delivered. The plea was *non assumpsit*. The plaintiff, on the 1st of April, 1836, sold goods to the firm of Joseph & John Atkinson, who were the defendants. The firm was dissolved in September, 1836. On the 15th of April, 1837, the two Atkinsons gave to the plaintiffs their promissory note for the price of the goods. Some payments were made on the note which reduced it to $500.00; and on the 18th of June, 1837, John Atkinson, in his own name, drew a bill of exchange on Mitchell & Co., of New York, for $500.00 at sixty days, and took up the promissory note. When the bill fell due it was duly presented for payment, but payment was refused for want of funds of the drawer. No notice was given to the drawer of the dishonor of the bill. There was no proof that the bill was returned to the drawer, or that the plaintiffs offered to surrender it at the trial. The plaintiffs were non suited and appealed. Daniels, Judge, said: " If the plaintiffs had surrendered the bill, even on the trial, they might have recovered on the original consideration. For the taking of the note first, then the bill, did not merge the original consideration as a bond would have done. But as this negotiable bill is still outstanding, and may be in the hands of an innocent endorser or holder, we are of opinion from the cases, that the plaintiff cannot recover, and that the nonsuit must stand."

In *Downey* v. *Hicks* it was held, that " where a certificate of deposit in a bank, payable at a future day, was handed over by a debtor to a creditor, it was no payment unless there was an express agreement on the part of the creditor to receive it as such, and the question, whether there was or was not such an agreement, was one of fact to be decided by the jury."

Justice McLean, in delivering the opinion of the court

said : " In ordinary transactions a check on a specie paying bank, payable on demand is payment. And if the holder of the check present it to the bank, and direct the amount to be placed to his credit as a deposit, and the bank should fail, the loss would be the depositor's. * * * A note of the debtor himself, or of a third party, is never considered as a payment of a precedent debt, unless there be a special agreement to that effect."

*Palmer et al.* v. *Elliot & Hovey*, 1 Cliff. 63. In *Hudson* v. *Bradley et al.*, 2 Cliff. 130, the notes given by the defendants were negotiable notes, but Justice Clifford in his opinion says ; "Where a party in this State (Massachusetts) who is bound to a simple contract debt gives his own promissory note for the debt, the presumption in the absence of any proof to the contrary is, that such note was accepted by the creditor in satisfaction and discharge of the pre-existing debt, but such presumption is one of fact only, and may be rebutted and controlled by any evidence showing that such was not the intention of the parties. He must mean when the note taken was *negotiable,* as this accords with the authorities we have already cited from Massachusetts. "A note which two parties had endorsed for a third being over due, the holder wrote the endorsers requesting that a new note be sent in renewal. They sent one accordingly, made and endorsed by the same parties, payable at six months and requested the return of the old note. No notice was taken of this request, nor were any steps taken to fix the liability of the endorsers on the new note, but after it fell due, suit was brought on the old note, and the new one was tendered to the parties on the trial who refused to receive it. It was held that the plaintiff by retaining the new note under the circumstances had made it his own, and it operated as a payment of the old one. *Sage* v. *Walker*, 12 Mich. 425. In *Marrett* v. *Brackett*, 60 Me. 524, it was held that "the taking of check for an existing debt, is not *ipso facto* a payment of the debt; but the acceptance of the check

99

implies an undertaking of the holder to use due diligence, in presenting it for payment." The giving of a negotiable note or draft has in the following cases been held to be *prima facie* evidence of payment of that for which it was given. *Ward* v. *Brown,* 56 Me. 161; *Banger* v. *Warren,* 34 Me. 324; *Arnold* v. *Sprague* 34 Vt. 402.

In Massachusetts it has also been held that payment by negotiable note, operates as a discharge and extinguishment of a prior debt, when so intended by the parties. *Fowler* v. *Bush,* 21 Pick. 230; *Appleton* v. *Parker,* 15 Gray 173; *Spooner* v. *Roland,* 4 Allen 485.

Balcom, Judge, said in *Jobbett* v. *Goundry,* 29 Barb. 509: " It is absurd to say that a creditor regards his demand as paid where he receives a check for it from his debtor on a bank. I think in ordinary transactions the creditor has not the least idea that his demand is paid though he may receipt it as paid upon receiving the check of a debtor or a third person, on a bank for the same. He cannot be supposed to regard the check as payment or a satisfaction of his demand, when the drawer has no funds in the bank to meet it and the bank refuses to honor it.

Where an antecedent debt is evidenced by negotiable paper, it is not enough that the new paper should have been received in payment and satisfaction of the old. To entitle the holder of the new paper to recover thereon, the old paper must be absolutely surrendered before maturity to the person from whom he received the new paper. *Bright* v. *Judson,* 47 Barb. 29.

The delivering of a check is not necessarily payment of the account, and the plaintiff was entitled to recover on the original indebtedness, and if the defendant relied upon the check to defeat the recovery, the *onus* was on him to show, that through laches of the plaintiff in respect thereof injury or loss has resulted.

The acceptance of a negotiable instrument for a debt, is no payment of it, without a separate agreement to that

effect distinctly proved. *Smith* v. *Miller*, 6 Rob. (N. Y.) 413.

1878;
Spe.ial Term.

Bantz.& Co.
v.
Basnett.

In *Johnson* v. *Bank of North America*, 5 Rob. (N. Y.) 554, it was held that it was fully settled in that State, that the acceptance of one negotiable instrument in place of another and the surrender of the latter, is not a satisfaction of it unless specially so agreed, and the burden .of proving such agreement rests on the party claiming its benefit. No case has ever implied that the surrender of a draft for a check, is anything more than a conditional acceptance of the latter as payment, and that such condition is that the check will be good if presented in proper time for payment, provided there is no valid legal excuse for not presenting it.

In New Jersey it has been held, that a check or promissory note, either of the debtor or a third person, received for a debt is not payment, if not itself paid; except in cases where it is positively agreed to be received as payment. Accepting a check or draft, implies an undertaking of due diligence, in presenting it for payment, and if the drawer sustains loss by the want of such diligence, it will be held to as operate payment. *Freeholders of Middlesex* v. *Thomas & Martin,* 20 N. J. 39.

Though the delivering of a bill or note, either of the debtor or of a third party, is not payment of a precedent debt, but merely suspends the remedy, yet if the holder be guilty of laches, it operates complete as satisfaction. *Shipman* v. *Cook*, 16 N. J. Eq. 251.

In Illinois, it has been held, that a negotiable note executed by a debtor to a third party in the settlement of his debt, at the instance of the creditor, or to the creditor himself, is *prima facie*, a payment of the original debt. *Smally* v. *Eddy*, 19 Ill. 207.

The bare reception of a check from the drawer for the amount of the bill will not ordinarily be considered as a payment, and such is the rule whether the bill is surrendered to the drawer at the time of receiving the check, or is retained by the holder, until payment is consum-.

mated. It may be imprudent to surrender the bill, before actual payment is made, but such imprudence does not change the rule. It may be shown however, that the check was in fact received in absolute payment. If the holder of the check appropriates it to his own use by putting it in circulation, it then becomes a payment of the bill for which it was received. *Strong* v. *King*, 35 Ill. 10.

It is well settled that the mere giving of a negotiable note, or its endorsement to a third party, does not extinguish the original cause of action, if the payee can show, that the note has been lost, or can produce it upon the trial to be cancelled. *McConnell* v. *Steltimus*, 2 Gil. 707. In this case, Purple, J. said, what is there to exempt this case from this just law rule? The basis of these decisions is, that when a party has once become indebted, he shall not be discharged until the debt has been actually paid, unless the debtor by some act or conduct of the creditor, has been placed in a worse condition." But see *White* v. *Jones*, 38 Ill. 160.

In Alabama, it was held that the taking of a debtor's negotiable note at or after the creation of a debt, is not a payment or extinguishment of the debt unless there was an agreement so to receive it. In the absence of any such agreement if the note is not paid at maturity, the creditor may sue on the original cause of action, and if he produces the note at the trial and offers to give it up to the defendant and the evidence shows, that it was taken "for the purpose of closing the accounts on the books, it is not error to instruct the jury that the taking of the note does not raise the presumption of payment." *Mooring* v. *Mobile Marine Dock and Mutual Ins. Co.*, 27 Ala. 254.

It was held in *Brown* v. *Crouise*, 21 Cal. 386, "where a creditor receives on account of his debt a bill of exchange drawn in his favor by the debtor upon a third person, it operates but as a conditional payment; if however the creditor fails to present it to the drawer for ac-

ceptance or payment as required by the rules of commercial law, it becomes thereby an actual charge against him and operates *pro tanto* as a satisfaction of his demand."

*2d. Payment by check, draft, negotiable or other note, of one partner or joint debtor, of partnership or joint debt*:

In *Heath* v. *Percival*, 1 P. W. 682, decided in in 1720, the facts were that "Sir Stephen Evans, the goldsmith and his partner Percival, were bound in a bond to the plaintiff for the payment of £1,000 and interest, and this so long since as 1693, in which year the money was employed in the partnership trade. In the same year Percival being very ill in health, they broke off partnership, when Sir Stephen Evans, by ready money and his own bond secured to Percival his share of the partnership stock, and took upon himself all the partnership debts giving his covenant to secure Percival from all such debts. The same year Percival died, leaving one Samuel Percival, his executor, and the defendant his residuary legatee. Public notice was given to all the creditors of the joint stock that they were either to receive their money of, or to look on Sir Stephen Evans only as their paymaster. In 1708, the plaintiff Heath, came to Sir Stephen and called in his money, but then continued it upon Sir Stephen subscribing the bond at £6 per cent. Sir Stephen continued solvent until 1711, and the plaintiff till that time might when he pleased have had his money. The plaintiff outlawed Samuel Percival, the executor, and brought his bill against Peter Percival the residuary legatee, to recover the £1,000 and interest out of the assets of Percival, the co-partner, Sir Stephen Evans having in 1711, become a bankrupt and insolvent." It was claimed that the plaintiff's altering the interest on the bond from £5 to £6 per cent, was an alteration of the security and consequently the defendant was no longer liable.

The Lord Chancellor held, "the defendant's testator being bound in the bond, he must be at stake until the

bond be paid, and though the defendant continued the money on the bond, this was not material since it was on the credit of both the obligors. And as to the notice given by Sir Stephen to the joint creditors, to bring in their securities, and that Sir Stephen alone would be hereafter liable, that being *res inter alios acta* could not bind the plaintiff; and his changing the interest did not alter the security, for still it was the bond of both, but the defendant could not be liable to more than £5 per cent. for the arrear interest."

In *Evans* v. *Drummond*, 4 Esp. 89, it was held that "if two partners give a joint bill of exchange for partnership demand, and when the bill becomes due the holder takes the separate bill of one, the other is discharged." Lord Kenyon said: " Is it to be endured that when partners have given their acceptance, and when perhaps one of two partners has made provision for the bill, the holder shall take the sole bill of the other partner and yet hold both liable ? I am of opinion that when the holder chooses to do so he discharges the other partner. Here the plaintiff has taken the bill of *Combrune*, after he admits that he was informed that Drummond had nothing to do with the concern. It is a reliance on the sole security of Combrune and discharges the defendant." The action was *assumpsit* on the original contractor. The verdict was for defendant. *Reed* v. *White et al.*, 5 Esp. 122 ; *David* v. *Ellice et al.*, 5 Barn. & Cress. 201.

In *Thompson* v. *Percival et al.*, 5 Barn. & Ad. 925, it appeared, that A. and B. dissolved partnership and agreed that the business should be carried on by B. alone, and that he should receive and pay all debts. Sufficient partnership funds were left in his possession. C., a creditor of the firm, afterward applied for payment of his debt to B., who informed him that A. knew nothing of his debt and that he, C., must look to B. alone. C. then drew a bill on B., which he accepted, but which was afterwards dishonored. Held, in an action brought by C. against A. and B., (the latter having become bank-

rupt) that it was a question for the jury whether it had been agreed between C., the creditor, and B. that the former should accept B. as his sole debtor, and take his acceptance in satisfaction of the debt due from both. Held, further, that such an agreement and receipt of the bill, would be a good defense to C's suit by way of accord and satisfaction; and that the fact of B. having had the partnership effects left in his hands, and having agreed with A. to pay all the partnership debts, was evidence of an authority of A. to make such an agreement on his behalf.

Denman, C. J., said: " But it is contended that the acceptance of a bill of exchange by one of two debtors, cannot be a good satisfaction, because the creditor gets nothing which he had not before. The written security however, which was negotiable and transferable, is of itself something different from that which he had before; and many cases may be conceived, in which the sole liability of one of two debtors may be more beneficial, than the joint liability of two, either in respect of the parties, or the convenience of the remedy, as in cases of bankruptcy or survivorship, or in various other ways; and whether it was actually more beneficial in each particular case, cannot be made the subject of inquiry." The case of *David* v. *Ellice, supra* was disapproved in this case.

In *Bottomley* v. *Nuttall,* 94 Eng. C. L., decided in 1858, it was held, that where one of the members of a foreign firm resident in England, bought goods on account of the firm for which he gave his own acceptance, and before the maturity of the bills, the acceptor became bankrupt and the drawer (or those to whom he had endorsed them) proceeded for the amount against the acceptor's estate and received dividends, the vendor of the goods (to whom the bill had been returned) had done nothing to prejudice his rights to have recourse against the other members of the firm for the unpaid balance. And that the mere fact of the vendors dealing with the

resident partner, making out the invoice to him individually and drawing upon him alone, though aware that he was a member of a firm and that the goods were to be shipped for the firm, made no difference.

In *Sheehy* v. *Mandeville*, 6 Cranch 253, Marshall, C. J., in delivering the opinion of the court said: "That a note without a special contract would not of itself discharge the original cause of action is not denied. But it is insisted that if by express agreement the note is received as payment, it satisfies the original contract and the party receiving it must take his remedy on it. This principle appears to be well settled. The note of one of the parties or of a third party may by agreement be recieved in payment. The doctrine of *nudum pactum* does not apply to such a case, for a man may if such be his will, discharge his debtor without any consideration. But if it did apply there may be inducements to take a note from one partner liquidating and evidencing a claim on a firm which might be a sufficient consideration for discharging the firm. Since then the plaintiff has not taken issue on the averment that the note was given and received in discharge of the account, but has demurred to the plea, that fact is admitted, and being admitted, it bars the action for the goods.   *   *   *   Whether the promise was made by Mandeville or not ceases to be material, if a note was received in discharge of the promise and the payment of the note need not be averred, since its non-payment cannot revive the extinguished *assumpsit*." See, also, *Harris et al.* v. *Lindsay*, 4 Wash. C. C. 98.

In *Arnold* v. *Camp*, 12 Johns. 409, it was held, " where a promissory note is given by a partnership and the payee afterwards takes the individual note of one of the partners for the amount and gives up the partnership note, it is a payment of the partnership note. And if the payee afterwards gets back the partnership note, from the individual partner on redelivering him his note and brings an action upon the partnership note, the

other partner may avail himself of these circumstances, as a bar to the action."

In *Waydell* v. *Luer*, 5 Hill 448, decided in 1843, a contrary doctrine is held, that " the giving of a promissory note by one of several partners or joint debtors, for a demand antecedently due from all, will not extinguish their liability, though the creditor expressly accept the note in satisfaction."

But the judgment in this case was reversed by the court of errors, 3 Denio 410, in which the court held, " that the giving of a promissory note for a co-partnership debt by one of several partners, individually, after the dissolution of the co-partnership, under an agreement by the creditor to accept it in payment of the debt, extinguishes the liability of the other co-partners." *Van Eps* v. *Dillage*, 6 Barb. 244.

In *Jones* v. *Johnson*, 3 S. & R. 276, the action was *assumpsit* brought by Johnson & Smith, type founders, residing in Philadelphia, against Jones, Morehead & Taylor, for the price of certain materials furnished for a newspaper establishment. The defense was that plaintiffs had accepted a single bill from Morehead and Taylor and two sureties for their claim, and had sued and received judgment upon the single bill, and therefore the claim was extinguished. The court held, that a higher security given by different parties, or for a different sum, will in the absence of proof of the intention of the parties, be presumed to have been accepted only as collateral security, and not in satisfaction of the debt. A merger takes place only where the debt is one, and the parties to the securities are identical, which works a dissolution, not of the debt, but of the original security. Extinguishment, or satisfaction of the debt, depends upon the agreement and intention of the parties, which is rightly referred to the jury as a question of fact.

In *Davis* v. *Desaque*, 5 Wheat. 530, it was held, that " Where the separate note of one partner is taken by a creditor, holding the note of the firm, it is a question of

intention whether this amounts to an extinguishment of the joint debt. The *onus* of showing that it is an extinguishment, lies upon those who allege it, and it is necessary for them to show a special contract to that effect, or that the first note was given up; and even where that is the case, the presumption may be rebutted by controverting proof." *Mann* v. *Wickersham*, 4 W. & S. 100; *Oliphant* v. *Church et al.* 19 Penn. 318; *Powell* v. *Charles's adm'r*, 34 Mo. 485.

In *Bowen* v. *Stell*, 49 Penn. 65, it was held, that if there be a joint liability, the act of the plaintiff in taking the individual note of one of the defendants, is not a satisfaction of the joint indebtedness, unless so expressly agreed, even though judgment be afterwards obtained upon it.

In Connecticut, *Bonnell* v. *Chamberlain*, 26 Conn. 481, it was held, that the taking of an individual note of one partner, for a partnership debt, where agreed to be taken in payment, extinguishes the partnership debt, and the question whether the note is taken in payment of the debt or only as collateral security, is a question of fact for the jury. A receipt in full unless given under circumstances of mistake, surprise or fraud, is a discharge of all indebtedness.

In *Parker* v. *Cousins*, 2 Gratt. 374, it appeared, that in 1833, Wyche & Parker were partners, merchandising in Petersburg, Wyche being the acting partner, and Parker being in Sussex. On the 31st of January, 1833, they were indebted to Cousins on account of a note of theirs which had been transferred to him, and for money advanced to Wyche to buy groceries, in the sum of $4,887.00, and on that day he advanced them the further sum of $1,049.00, making due him $5,936.00, and he took their negotiable note for $6,000.00 at sixty days. The note was given under an agreement between Cousins and Wyche, acting for the partnership, that the note was to be renewed every sixty days until May, 1837, upon the discount being paid by them. The notes were regu-

larly renewed until the 12th of May, 1836, when the note on which the suit was brought, was executed. Between the 31st of January, 1833, and February, 1835, the firm of Wyche & Parker was changed several times by the admission and withdrawal of another partner, and on such occasions the name of the firm was changed but these notes were always made in the same name of Wyche & Parker. At the last date the firm was dissolved. The note to Cousins continued to be renewed by Wyche after the dissolution, until he absconded in June, 1836, and the only change in the mode of its execution was that it purported to be signed, " Wyche & Parker, by William P. Wyche." The suit was an action of debt, against the late firm on the note, the declaration also contained the common counts. The suit abated as to Wyche on the return of " no inhabitant." Parker pleaded *nil debet*, with an affidavit according to the statute, in which he denied the execution of the note by himself or by any person authorized to act for him. The defendant demurred to the evidence, and judgment was given for plaintiff. Upon writ of error in the Court of Appeals of Virginia, it was held that " partners make a note and then the partnership is dissolved, the partner who is authorized to settle up the business of the partnership, cannot renew the note in the partnership name, so as to bind the other partner. In such a case, though the last note does not bind the partner who has executed it, the first note is still a valid security as against him, though it was surrendered when the last note was taken. The renewed note being made in the partnership name, it cannot be inferred that the creditor intended to release the partner who did not execute it, and look alone to the party who renewed the note for payment. The taking a new security from one of two joint debtors will release the other, if in any case, only where there is an agreement by the creditor, express or implied, that he shall be released." This last point, as the court considered, did not fairly arise in the case and on that point, Stanard, Judge, who

delivered the opiuion of the court, said "without enter-ing into the enquiry whether in any case the unperformed promise, oral or written, by one of two already bound for the same debt, by a like promise to the same party, can discharge or be pleaded or be read in evidence, to bar the legal remedy on the original promise, I think it may be safely affirmed on principle and authority, that such dischage will not be effected nor such bar be created, unless the parties making and accepting such new promise intended or stipulated that such discharge or bar to the former *assumpsit*, should be the consequence of the making and acceptance of the new several promises."

The judgment was unanimusly affirmed.

3. *Payment by note or check of third party*:

In *Rearslake* v. *Morgan*, 5 Durnford & East 275, it was held that a plea in an action of *assumpsit* that the defendant, who was the payee of a promissory note, en-dorsed it to the plaintiff "for and on account of" the said debt is a good plea.

In *Owen,* v. *Morse,* 7 Durnford & East 32, it was held, that if the seller of goods take the notes or bills of a third party for them, without agreement to run the risk of the notes being paid, and the notes turn out to be worth nothing; the notes will not be considered as payment.

In *Tapley* v. *Martin*, 8 Durnford. & East 24, the facts were that A. wishing to send goods to B. at X. employed C. to carry them to B., and engaged to pay C. for the freight; C. on delivering the goods accord-ing to the order, took a bill of exchange from B. drawn on A. which bill was never paid; it was held that A. was˙ liable to pay the amount of the freight to C. notwith-standing the bill of exchange. The action was debt on a charter party, between the master of the brig *Hero* and the defendant the freighter.

Lord Kenyon said: "The case states that the plaintiff applied to Acquabona "to settle for the freight," but it does not from thence follow that he applied for payment

by means of a bill of exchange, money would have been of more value than a bill,.either at Acona or any other point in Italy, or if the plaintiff had been guilty of any negligence after he had taken the bill in not endeavoring to enforce payment of it, that might have been an answer to the present demand, but this bill was drawn on the defendant himself which might have deluded the most cautious man, it was a payment in the usual mode of payment in the commercial world, the plaintiff has been guilty of no neglect and the question is, can this be considered as payment of the plaintiff's debt? I think not. All that is required of an agent is that he shall use common prudence. Here the plaintiff did use common prudence, the defendant by sending the goods to the consignee at Acona accredited him thereon. I am therefore clearly of opinion that this bill cannot be considered as payment of the plaintiff's demand, and that defendant is now liable on the charter party to pay the amount of it."

*Camedge* v. *Allenby*, 6 B. & C. 373, was an action for the price of goods. It appeared that the goods were sold at York, on Saturday the 10th December, 1825, and on the same day at three o'clock in the afternoon the vendee delivered to the vendors, as and for the payment of the price, certain promissory notes of the bank of D. & Co., at Huddersfield, payable on demand to bearer. D. & Co. stopped payment on the same day at eleven o'clock in the morning, and never afterwards resumed their payments, but neither of the parties knew of the stoppage or of the insolvency of D. & Co. The vendor never circulated the notes nor presented them to the bankers for payment, but on Saturday the 17th, he required the vendee to take back the notes and to pay him the amount, which he refused. Held under these circumstances that the vendor of the goods was guilty of laches and had thereby made the notes his own and consequently that they operated as a satisfaction of the debt.

Bailey, Judge, said, "it is clear that the plaintiff on

1877.
Special Term.

Bantz & Co.
v.
Basnett.

that day, (the day he received the notes), might have had knowledge that the bankers had stopped payment, and having that knowledge, if presentment was necessary, he had another duty to perform.   In consequence of the negotiable nature of the instrument, it became his duty to give notice to the party who paid him the notes, that the bankers had became insolvent, and that he, the plaintiff would resort to the defendant for payment of the notes, and it would then have been for the defendant to consider whether he could transfer the loss to any other person, for unless he had been guilty of negligence, he might perhaps have resorted to the person who paid him the notes.   That party would however, be discharged if he received no notice of non-payment, or of the insolvency of the bankers, till a week after he had paid them to defendant.   The neglect therefore, on the part of the plaintiff to give notice, might have been prejudicial to the defendant.   The law requires that the party on whom the loss is to be thrown, should have notice of non-payment, in order to enable him to exercise his judgment whether he will take legal measures against other parties to the bill or note." See *Bishop* v. *Rowe*, and *same* v. *Bailey*, 3 M. & S. 362; *Swingard* v. *Rarnes*, 5 M. & S. 62.

In *Smith* v. *Ferrand*, 7 Barn. & Cres. 19, it was held that where the seller of goods received from the purchaser an order upon his banker for the price, and the latter, with whom money had been deposited to meet that and certain other demands, offered to pay in cash, deducting discount for the period of credit, or by a bill upon a third person, which the seller elected to take, although the bill was afterwards dishonored, the seller could not sue the purchaser for the price of the goods.

In *Robinson* v. *Read*, 9 Barn & Cres. 449, a tradesman, who had supplied goods to a ship, sent in his account to the owner's agent and ship's husband, and took his acceptance at three months for the amount, deducting discount for that time, which was the usual credit,

and when the bill became due, consented to a renewal of it, adding interest, and in like manner took a third acceptance, which was dishonored, and the agent soon afterwards failed; the balance in his hands in favor of his principal, (the ship owner), having during all this time exceeded the amount of the bill, which was however unknown to the principal, who had never inspected the agent's accounts; it was held that the tradesman might sue the ship owner for the amount of this claim, and that it was not discharged by the acceptance of the agent. The action was for goods sold and delivered, &c., upon the original demand. The acceptances were signed by Robinson and drawn on Read, who accepted them in his own name. The report does not show that the acceptance was produced at the trial, or what became of it. See *Corbett* v. *Swinburn*, 8 Ad. & El. 673; *Ward* v. *Evans*, 2 Lord Raymd., 928.

In *Whitbeck* v. *Van Ness*, 11 Johns. 409, the action was *assumpsit*. Besides the common counts for goods sold, &c., and the money counts, the declaration contained, a count for horse sold to defendant, and a note of one Deane for $90.00 taken for the horse, which the defendant represented as good, and the maker responsible, when the defendant knew that Deane was not responsible, and that in consideration of the premises, the defendant promised to pay for the horse, the amount of the note. There was also a count for a horse sold and delivered for $90.00. The evidence showed that some conversation passed between the plaintiff and defendant, relative to the purchase of plaintiff's horse. Afterwards the defendant desired a person, who was a witness in the case, to inform the plaintiff that defendant would give him $90.00 for the horse, if he would take the note of Daniel S. Deane, payable in six months with interest. The plaintiff told the person that defendant had said Deane was perfectly good, and that he would endorse the note. The witness replied that he had no instructions further than to make the offer he had done for the defendant.

A few days afterwards, the plaintiff agreed to accept the offer, and the defendant sent the note of Deane, for $90.00, dated the 2d of August, 1808, payable in six months with interest. The note, except the signature was in the handwriting of the defendant. The plaintiff on receiving the note, delivered the horse to witness, who sent it to defendant. Nothing was said at the time of the delivery as to the solvency of Deane, or at whose risk the note was to be taken. It appeared that Deane at the time the note was so take i, and since was not a person of good credit or responsibility. Though it appeared he was sometimes trusted, yet his notes remained unpaid in the banks at Hudson and he was frequently sued.

The Chief Justice charged the jury that the plaintiff was entitled to recover for the horse, unless he had expressly agreed to take the note at his own risk, of which in his opinion there was no evidence. The jury found a verdict for the plaintiff for $118.00.

Spencer, Judge, in delivering the opinion of the court said : " The intrinsic circumstances of this case plainly show that the plaintiff considered himself as taking Deane's note at his own risk. It was made payable to the plaintiff himself, and the defendant in not endorsing it or guaranteeing the payment clearly declines pleading his own responsibility. The offer was made by defendant's agent of Deane's note for the same ; the plaintiff took time to consider whether it was advisable to take Deane's note, and after deliberation, and we must presume too, after enquiry, agreed to sell the horse for the note. It appears to me we should be preventing the manifest agreement of the parties, if we were to pronounce that the plaintiff did not take the note at his own hazard. To my mind the nature and proof of this transaction furnished as decisive proof that the plaintiff was to take the note at his own peril, as if it had been stipulated in express terms." A new trial was granted.

To the same effect is *Ellis* v. *Wilde*, 6 Mass. 321 ; see also *Lyon* v. *Dunn*, 6 Ired. 133.

In *Whiting* v. *Goin*, 20 N. H. 354, it was held, "if a creditor receives of his debtor, when the debt was contracted, the note of a third person, and endorsed by said debtor, it will not be deemed to have been taken in satisfaction."

In *Griffin* v. *Grogan*, 12 Cal. 317, the court held "The authorities proceed upon the obvious ground that nothing is to be considered payment in fact, but that which is in truth such, unless something else is expressly agreed to be received in its place. That the mere promise to pay, whether by the original debtor or a third party, cannot of itself be regarded as an effective payment is manifest." See also *Higgins* v. *Wortell*, 18 Cal. 331.

In *Welch* v. *Allington*, 23 Cal. 322, it appeared that Allington, had given the plaintiff a promissory note for the same amount as the note sued on, executed by one Smith, not at the time due, and the note sued on was delivered up to Allington. Smith it appeared had a note against Allington for an amount sufficient to set off the note thus transferred by Allington to the plaintiff, and when the plaintiff demanded the money due on Smith's note, the latter claimed the set-off and refused to pay. The plaintiff then brought this action upon the original note which had been surrendered at the time of the exchange.

The Appellant contended that the plaintiff had no right of action upon the original note, until he had instituted suit against Smith, or it was shown that Smith was insolvent or had absconded from the State. But the court held, " that when a promissory note is received upon an antecedent debt, such debt is not extinguished thereby, unless the new note was, by express agreement, received in payment of the antecedent debt that it only operated to extend, until the maturity of the note, the period for the payment of the debt. There is no evi-

dence in this case of an express agreement, that the new note was to be in payment of the old one, or that the debt due on the old note was to be extinguished by accepting the new one. The only fact tending that way, was that the old note was surrendered when the new note was received ; but that was held insufficient to prove such an agreement in *Olcott* v. *Rathbone,* 5 Wend. 409. The law will not presume such an agreement, and it must be proved by the party relying upon it."

In Maine and New Hampshire it has been held, that an accepted negotiable order or note of a third person, given by a debtor to his creditor for a precedent debt, is no defense to an action on such indebtedness, although the debtor has the original bill receipted as paid by such order; and payment of such precedent debt by such order can only be proved by a special agreement to that effect. *Jose* v. *Baker,* 37 Me. 465 ; *Bartlett* v. *Mayo,* 33 Me. 518 ; *Coburn* v. *Odell,* 10 Foster 540 ; *Smith* v. *Smith & Barnett,* 27 N. H. 244.

In *Westfall, Stewart & Co.* v. *Braley,* 10 Ohio St. 188, it was held, that where bank bills are transferred and received as money in payment of a debt, after the bank by which they were issued has stopped payment, though its failure is not yet known at the place of payment, nor by either of the parties, the loss in such case must, in in the absence of any special agreement, be borne by the party paying the bill, provided the other party be guilty of no laches in retaining them for an unreasonable time.

In *Dakin* v. *Anderson,* 18 Ind. 52, a debt was paid in the paper of the " Citizens' Bank of Gosport," which paper was illegal and void, and the creditor sued upon the debt as still unpaid, and the debtor pleaded that he was not receiving or paying out such paper, but the creditor requested him to procure said paper, and agreed that if he would procure and deliver the same to him to accept it in full satisfaction of the debt, and that he did, in consideration of such request and agreement, procure

and deliver said paper, which was received by the cred- <span>1877.<br>Special Term.</span>
itor in full payment. Held: that such plea was good, <span>Bantz & Co.<br>v.<br>Basnett.</span>
and if the facts were true, the creditor was estopped
thereby from setting up his claim.·

In *Tuttle* v. *Chapman,* 10 Iowa 437, the maker of a
promissory note gave to the payee an order on a third
party, with an agreement that if collected, it should be
applied on the note, and the payee delivered up the or-
der to the drawee and took his note for the amount, pay-
able to himself at a future time fixed; it was held that
the drawer was entitled to credit on his note, though the
note executed by the drawee was not collected.

The receipt by the payee from the maker of a prom-
issory note, of the note of a third person, will be deemed
a conditional ·and not an absolute satisfaction of the
original debt, or note of the maker, unless otherwise
agreed between the parties. *Kephart* v. *Butcher,* 17 Iowa
240; *Farwell* v. *Salpaugh,* 32 Iowa 582.

In Wisconsin it has been held that the giving and re-
ceiving of a promissory note, is not an extinguishment of
the original contract, nor does it change its nature, un-
less it be expressly so agreed. The payment is only
suspended for the time being. *Blount* v. *Walker,* 11
Wis. 334; *Eastman* v. *Porter,* 14 Wis. 39; *Lindsey* v.
*McClelland,* 18 Wis. 505.

In *Hotchin* v. *Secor,* 8 Mich. 494, a note of two mem-
bers of an association was taken for the amount of a
debt against the association, and this note was after-
wards paid in part, by the makers, and their note on
longer time was taken for the balance; and suit being
brought on the original debt, the court was asked to
charge the jury, "that it was not absolutely necessary to
show an express agreement on the part of the plaintiffs
to receive the note in payment of the claim against the
association, but that if the jury find, from all the cir-
cumstances of the case, and the subsequent acts of the
plaintiffs in regard to said note and in taking new notes
of·the makers, and extending the time of payment, they

had acted, and treated said notes as their own and as received in payment of their claim, then the jury are authorized to take such facts into consideration, and find that the note was received in payment, if the evidence satisfies them that such was the fact." Held, that this request presented substantially a correct view of the law, and the court erred in declining to charge accordingly.

In New York it has been held, that the acceptance by a creditor from his debtor, of a bill or note made by a third person on account of debt, does not satisfy it unless the parties agreed that it should be received as payment. *Noel* v. *Murray*, 13 N. Y. 167.

If the note of a third party is received by the creditor at the time the debt was contracted, the presumption is that it was agreed to be taken in payment, but such presumption may be rebutted, by evidence of a contrary intention. *Young* v. *Shanklin*, 34 N. Y. 258.

Receiving from the president and agent of a corporation, on applying to him as such agent for the payment of a sum then due from the corporation, part cash, and the balance in a note at thirty days, made by a firm of which such president was a member, and the giving of a receipt that the whole sum so due has been received, will not operate as a payment by the corporation of the sum for which the note was so taken, unless it was expressly agreed at the time that it should be received as actual payment. *Higby* v. *New York & Harlem R. R. Co.*, 3 Bosw. 497. To the same effect is *Toby* v. *Barber*, 5 Johns. 68.

The same doctrine is held to apply to the promissory note of a third person, given in full discharge of a debt for goods sold, where the maker of the note was insolvent and neither party knew the fact. *Roberts* v. *Fish*, 43 N. Y. (4 Hand) 159.

To establish the defense of payment of a precedent debt by a note of a third person, it is necessary for the defendant to prove that the note was given to the credi-

tor and received by him upon the express agreement that it should extinguish the previous debt. *Crane* v. *McDonald*, 45 Barb. 354; *Gibson* v. *Toby*, 53 Barb. 191.

In Missouri it has been held the acceptance by a creditor of the note of a third party for a debt is not *prima facie* an absolute payment. To have that effect it must be agreed that it should be taken in satisfaction. *Appleton* v. *Renner*, 19 Mo. 637; *Citizens' Bank of Steubenville* v. *Carson*, 32 Mo. 171.

In North Carolina, where one contracted for a lot of corn to be delivered on a certain day, and in payment therefor delivered without endorsement a note of a third person then in good credit, but in reality insolvent and who became notoriously insolvent before the day fixed for the delivery of the corn; it was held that the loss fell on the purchaser of the note in the absence of proof that the seller knew of the insolvency of the maker. *Leroy* v. *Spruill*, 7 Jones L. 96; *Sellars* v. *Johnson*, 65 N. C. 104; *Gordon* v. *Price*, 10 Ired. 585; *Dewey, Cash.* v. *Bowes*, 4 Ired. 538.

In Alabama it has been held that the parties may agree that the note of a third person may be given in payment of a debt, and where this is expressly agreed the original liability is completely extinguished. *Abercrombie* v. *Morely*, 9 Ala. 145.

In Arkansas it has been held that where a security against whom a decree was rendered, pays the amount in cash and a note with security, which are received by the creditor in full discharge of the decree, and satisfaction is entered of record, this is such a payment as will entitle the surety to maintain an action against the principal for the debt, so paid by him. *Bone* v. *Terry*, 16 Ark. 83.

A negotiable note given and accepted for the debt of a third person, is an extinguishment of such debt, and proof of this is sufficient to support an action against the debtor for money paid. *Virer* v. *Bertrand*, 14 Ark. 267.

In *Devlin* v. *Chamberlain*, 6 Minn. 468, it was held that taking the note or security of a person other than the debtor is not *prima facie* evidence, that the same, was taken in payment of a precedent debt. There must be evidence of an express agreement to take such note in payment, in order to give it that effect, and the burden of proof is on the debtor to show such agreement. But the rule seems to be different where a commercial instrument is given in payment at a contemporaneous sale, and the vendor is not liable on the instrument. In such case the presumption of law is, that the vendee is not liable on the original indebtedness.

*Payment by note, or other paper of the debtor himself* :

In *Puckford* v. *Maxwell*, 6 Durnf. & East. 36, the defendant was arrested for debt, and gave the plaintiff a draft for £45, part of the debt of £80, and agreed to meet the plaintiff a few days afterwards, to settle the remainder of the debt, on which the plaintiff agreed that the defendant should be discharged from custody. The draft was dishonored, the defendant having no funds in the hands of the drawee, whereupon the defendant was again arrested on the same affidavit. A rule was awarded calling on the plaintiff to show cause why the defendant should not be discharged out of custody. *Erskine* was called upon to support the rule ; and he made two objections to the plaintiff's mode of proceeding : 1st, that the plaintiff having agreed to accept this bill in part payment of the debt, could not merely because the bill was dishonored, treat the transaction as a nullity, and arrest the defendant a second time for the old debt, there being no fraud in the transaction. Lord Kenyon, C. J., said "in cases of this kind, if the bill which is given in payment does not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and therefore he may consider it a nullity, and act as if no such bill had been given at all. Those questions had frequently arisen at *nisi prius*, where they have always been determined the same way. I remember one

in particular, a few years ago, when a rector in the country gave a draft on a parson in London with whom he had no connection whatever and it was admitted on all hands that it ought to be considered as if no bill had been given at all, and that the original debt remained in force." The rule was discharged.

In *Hearn* v. *Cochran*, 4 Man. G. & S. 272, the action was *assumpsit*. The first count was on a bill of exchange for £732 13s., drawn by the plaintiff on the 14th of December, 1839, payable two months after date, and accepted by the defendant. To this count the defendant pleaded that after the making and accepting the bill of exchange as stated in the count, and after the bill of exchange became due and payable, and before the commencement of the action, the defendant made his certain note in writing, bearing date, &c., and thereby promised to pay the plaintiff or his order on demand, £1050, and then delivered the same to the plaintiff, and who took the same *for and on account* of the last mentioned bill of exchange, and the causes of action in respect thereof, in the said first count mentioned; and thereupon afterwards, and after making and delivering *by the defendant to the plaintiff* of the promissory note in the plea mentioned, and before the commencement of the suit, on &c., it was agreed by and between the plaintiff and defendant, and Thomas, Earl of Dundonald, that the said Thomas should sign and seal, and as his act and deed deliver to the plaintiff, in full satisfaction and discharge of the said promissory note in the plea mentioned, and of all causes of action in respect thereof, and of the causes of action in the first count mentioned, a certain deed or instrument called a warrant of attorney to confess a judgment bearing date, &c., in the form and to the effect, and with the defeasance thereunder written, herein next mentioned, respectively, and that the plaintiff should accept, and receive the same of and from the said Thomas, Earl of Dundonald, in full satisfaction and discharge as last afore-

said, &c., and avers, the execution and delivery of said instrument, describing it particularly, and that the plaintiff before the commencement of the action accepted and received said warrant of attorney with the said defeasance thereunder written, of and from the said Thomas, Earl of Dundonald, in full satisfaction and discharge of the said promissory note in the plea mentioned, and of all causes of action in respect thereof, and of the said cause of action in the first count mentioned. The plea concluded with a verification.

It was objected, that the plea was double because it, set out, two defenses: the giving of the promissory note, and the execution and receipt of the warrant of attorney.

Wild, C. J. said: "It appears to me that this plea is free from the objection of duplicity. At first sight, the question seemed to present a difficulty, which vanishes upon better consideration. The plea commences with stating, that after the maturity of the bill mentioned in the first count the defendant delivered his promissory note payable on demand, to the plaintiff, who then took and received the same for and on account of the bill and the cause of action in respect thereof. Now this instrument was of no greater effect than the original liability of the defendant, viz: to pay the debt on request, and in no respect alters the position of the parties, for it appears that the note still remains in the possession of the plaintiff; the plea, alleging that a warrant of attorney was afterwards given in satisfaction and discharge of the note, and of all causes of action in respect thereof, as well as of the causes of action in the first count mentioned, which it could not be unless the note remained in the plaintiff's hands. The only mode therefore by which the plaintiff's demand is said to be satisfied, is by the delivery of the warrant of attorney.

If the warrant of attorney was given in satisfaction of the note, that in point of law would be a satisfaction of the original debt; and the allegation in the plea, that

1877.
Special Term.

Bantz & Co.
v.
Basnett.

the last mentioned security was given in satisfaction and discharge of the note and all causes of action in the first count mentioned, is but an allegation of the legal effect of the facts before stated. Putting it at the highest, the note is but in the nature of a collateral security; and the warrant of attorney satisfies both the original debt, and the collateral security. The plea therefore states but one defense."

Cresswell, Judge, said : "It is contended that the plea is double because the delivery of the promissory note therein alleged, operated either as a satisfaction of the original debt, or as a suspension of the remedy, and a delivery of the warrant of attorney also operated as a separate and independent satisfaction. That which is stated with respect to the note however, falls short of satisfaction or suspension of remedy. A note payable on demand, could be no satisfaction of the debt or suspension of the remedy, so long as it remains in the hands ot the plaintiff. It would be no defence on general demurrer. *It is not a defense ill pleaded but simply no defense at all.* The *only* defense the plea sets up, is the delivery of the warrant of attorney."

There being a demurrer to the plea, it was sustained and judgment rendered for defendant.

*Price* v. *Price*, 16 Mess. & Welb. 231, was an action of debt for money lent, and on account stated. The plea was as to £100, parcel &c., that after that sum had become due, and before the commencement of the suit, the defendant made his promissory note for the payment to the plaintiff's order of £100, six months after date, and delivered the same note to the plaintiff, who then took and received the same for and on account of the said sum of £100 parcel, &c., and the causes of action in respect thereof. The plea was held bad on general demurrer for not averring that the note was still running, or that it had been endorsed over by plaintiff. *Roader* v. *Barnes*, 1 Burr. 9; *Cumber* v. *Wane*, 1 Stra. 426; *Bishop* v. *Rowe*, 3 M. & S. 362; *Mendrick* v. *Lomax*, 2 Crom.

& Jer. 405; *Hill* v. *Bebee*, 3 Kernan 556; *Winslow* v. *Hardin's exo'r* 3 Dana. 543. But see *Sard* v. *Rhodes*, 1 M. & W. 152.

In *Rogers* v. *Town of Shelburn*, 42 Verm. 550, where the plaintiff took a town order for $300.00 without prejudice to his full claim, which the town treasurer refused to pay ; and the order was not produced on the trial or accounted for, and there was nothing in the case to show that the order was negotiable, it was held that the plaintiff was not required to treat the order as payment of any part of his original claim.

In *Babcock et al.* v. *Hawkins*, 23 Vt. 561, Redfield, Judge, in delivering the opinion of the court said, " we think it must be regarded as fully settled, that an agreement upon sufficient consideration, fully executed, so as to have operated in the minds of the parties as a full satisfaction and settlement of a pre-existing contract of account between the parties, is to be regarded as a valid settlement, whether the new contract be ever paid or not, and that the party is bound to sue upon the new contract, if such was the agreement of the parties. This is certainly the common understanding of the matter. It is reasonable, and we think it is in accordance with the strictest principles of technical law. There is no want of consideration in any such case, where one contract is substituted for another, and especially so where the amount due upon the former contract or account is matter of dispute, (as was the case here). The liquidating a disputed claim is always a sufficient consideration for a new promise. *Holcomb* v. *Simpson*, 8 Vt. 151. "The accord is sufficiently executed when all is done which the party agrees to accept in satisfaction of the pre-existing obligation. This is ordinarily a matter of intention, and should be evidenced by some express agreement to that effect, or by some unequivocal act evidencing such a purpose. This may be done by surrender of the former securities, by release or receipt in full, or in any other mode. All that is requsite is, that the debtor

should have executed the new contract to that point whence it was to operate as a satisfaction of the pre-existing liability in the present tense. That is shown in the present case, by executing in full the same, as if the old contract had been upon note or bill, and the papers had been surrendered. In every case where one security or contract is agreed to be received in lieu of another, whether the substituted contract be of the same or a higher grade, the action in case of failure to perform must be upon the substituted contract. And in the present case, as it is obvious to us, that the plaintiff agreed to accept the note and the defendants promise to pay the costs, in full satisfaction and in the place of the former liability, the defendant remained liable only upon the new contract. In all cases where the party intends to retain his former remedy, he will neither surrender nor release it, and whether the party shall be permitted to sue upon his original contract, is matter of intention always, unless the new contract be of a higher grade of contract; in which case it will always merge the former contract, notwithstanding the agreement of the debtor to still remain liable on the original contract. In every case of a valid contract, upon sufficient consideration to discharge a former contract in some new mode, the new contract supersedes the remedy for the time, until there has been a failure, and then the creditor may always, if he choose, sue upon the new contract. This is certainly the inclination of the modern cases."

The facts of this case were, suit was brought on account and pending the suit, the parties met, and the defendant agreed to give a note for $30.00 to the plaintiffs, and pay all the plaintiffs' costs in the suit, except the writ and service. The defendant executed the note which was credited by the plaintiffs and agreed to pay the costs, and the plaintiffs then executed and delivered to the defendant a receipt in these words: " Received of Peter Hawkins $30.00, by note given per

1877.
Special Term.

Bantz & Co.
v.
Basnett.

this date in full to settle all book accounts up to this date," and the suit as well as the subject matter of the suit, was considered settled by the parties. The defendant never paid any portion of the costs, but paid part of the note, and for the reason that the defendant had not paid the costs the plaintiffs refused to discontinue their suit, and the court on the above state of facts rendered judgment for the defendant, which was affirmed. From this state of facts it is evident that much of the opinion of Judge Redfield is mere *obiter dicta.*

In *Dixon* v. *Dixon et al.,* 31 Vt. 450, it is held that "it is well settled that a note received in payment of a pre-existing debt is received and held upon valuable and valid consideration. If a note be received in payment of a former one, it is not necessary to its validity that the old one should be delivered up at the time the new one is received."

In *Eastman* v. *Porter,* 14 Wis. 39, it was held, " it is a clear rule of the common law that a subsisting simple contract is not destroyed or extinguished by the acceptance of another contract of the same nature, given by the same party, and founded on the same consideration, unless it be expressly so agreed. The new contract is considered as nothing more than a new evidence of the same original contract or indebtedness, and if it is not performed the party may resort to his remedy on the latter." See *Lindsey* v. *McClelland,* 18 Wis. 505.

In Iowa it was held that the acceptance of a promissory note for the amount of the account, will not operate as a satisfaction of the account unless so received. *McLaren* v. *Hall et al.,* 26 Iowa, 297.

In *Merrick* v. *Boury & Sons,* 4 Ohio St., 60, Merrick, the debtor, who had bought goods of Boury & Sons on the 17th of July, 1851, wrote to Boury & Sons as follows : " On the 22d of December, 1850, I received your dispatch authorizing me to retain the goods on a year's credit. * * * I will therefor *pay you the balance due,* $548.04, but no more, and if you choose to call on

Meyers, Shoyluff & Ensey, 13 N. Howard street, they will hand you my note for that amount, in full of account to date—not that I consider that amount due you in equity, but *because I said I would pay you that much.*" On the 7th of August, 1851, Boury & Sons, answered the above letter and wrote to Merrick on that day acknowledging the receipt of his of the 17th of July, 1851, in which, among other things, they say to Merrick : " We have signed the receipt transmitted through Meyers, Shoyluff & Ensey, and the note received of them for $548.04, has been duly passed to your credit, and as you are aware, that our invariable custom is to make all drafts, notes, &c. due us, payable with difference of exchange on Baltimore, we have taken the liberty to add this small item to said note, not doubting it will fully meet your approval." This letter was received by Merrick and no reply made to it and nothing more heard of the matter until about the time the note became due, when it was sent to the bank in Zanesville where Merrick resided, for collection. When the note was due Merrick called at the bank, and offered to pay the amount, but not the difference of exchange. This the cashier refused to receive, and the note was returned to the payees. After this Merrick refused to pay anything.

Thereupon suit was brought, the declaration containing a count on the note and the common counts. On the first of which judgment was given for Merrick, and on the latter, a judgment rendered in the common pleas, for the amount admitted to be due Boury & Sons by the letter of Merrick. An appeal was taken by him to the district court when again judgment was rendered against him as above, and to review this judgment the writ of error was allowed.

Thurman, C. J., said : " The special count in the declaration was upon the note as altered, and as the court found for Merrick upon this count, they must have held that the alteration was made without his authority and

was never ratified by him. But whether the verdict for Boury & Sons upon the common counts was upon the note as it existed previous to the alteration or upon its consideration, the original indebtedness, does not appear by the record. Let it have been upon either or even upon the note in its altered shape, the common counts were entirely sufficient and the judgment cannot be disturbed, unless the verdict is clearly against the evidence.

"Thus if the verdict can be sustained only upon the ground that the note was not taken in payment of the antecedent debt, and that the alteration was made without any fraudulent purpose, it must be presumed upon a petition in error that these facts were found by the court and this finding will not be disturbed merely because we might doubt its correctness. The findings of a court when substituted for a jury are entitled to the same consideration as the verdict of the latter, and it is well settled that the verdict will not be set aside upon the ground of an erroneous finding, unless it is clear that such is the case. We are inclined to think however that there is no necessity in the present case for an application of this rule for we can hardly say that the testimony would warrant the finding that the note was taken as payment, and as to the alteration, we see no reason at all to believe that it was made with a fraudulent intent."

In *Porter* v. *Talcott*, 1 Cow. 380, it is said, " the law is well settled, that a note given by a debtor for a precedent debt, is no payment of the original demand, unless it is expressly agreed to receive it in payment;" and this is the doctrine of very many cases. See *Toby* v. *Barber*, 5 Johns. 72, and the cases there cited. In *Johnson* v. *Weed*, 9 Johns. 310, it was held, that the agreement must be "clear and special," otherwise the paper will be no payment. On the other hand it has been ruled, that " the object of giving a note may as well be ascertained from circumstances, as from an express agreement. *Riley & Van Amrige* v. *Anderson*, 2 McLean 594. And the same doctrine is asserted in Story on Promissory

Notes, §104. But whatever may be the law of evidence; nearly all the cases concur in holding, that it is only by force of an agreement of the parties, that the giving of an unsealed note by the debtor will be a payment; that the burden of proof is upon the debtor, who must establish the agreement clearly; and that the question, whether there was such an agreement, is one of fact to be determined by the jury. How, then, stands the present case? It is not pretended that there was any proof of an express agreement that the note should be payment, and we think it must be held that it is not clearly inferable from the circumstances." The judgment was affirmed. See *Sutliff* v. *Atwood*, 15 Ohio St. 186.

In *Doebling* v. *Loos*, 45 Mo. 150 it was held, that in a suit on an account, the mere acceptance by the plaintiff of notes given by defendant for the debt, and the giving of a receipt for the amount due, without further proof, does not constitute such evidence of payment, as to warrant the court in sending the case to the jury.

In *Castleman* v. *Holmes*, 4 J. J. Marshall 1, Judge Underwood, in delivering the opinion of the court said, "Where a debt is continued by renewing notes each renewal is to be regarded as a new contract. The old contract is then settled, and the old note is then generally concelled, and thus there is no other contract in existence, but the new one. Its date of necessity then must be the time when the debt was contracted. These transactions of renewing debts by new notes, are equivalent. to paying the existing debt, and again borrowing the money. The old debt is paid off by the new. The interest accrued may be inserted in the new note and thus the consideration, and the amount of the debt, are both different from what they were originally; all which in addition to the time stated upon the face of the note, acknowledged by the obligor as the date of the contract, leads us to the conclusion that December 1819, ought to be regarded as the date when Holmes's debt was contracted, It follows that all those who were shareholders, on the 8th

day of December, 1819, are bound to contribute to the payment of the debt." The money for which the original note was given was borrowed of Holmes, by a corporation in March, 1816, and the note renewed from time to time until December, 1819. And the question was what shareholders were liable for the debt. The stockholders, according to the charter, were individually liable for no other than the debts contracted "*during the time he or they held stock.*" No authority is cited by the court to sustain the decision.

The doctrine laid down in this case is clearly repudiated in *Kibbey* v. *Jones*, 7 Bush. 244, where it is held "that a renewal of an obligation to pay is not a payment." In this case one owed another $100.00, and sometime thereafter having become indebted in $80.00 more, executed his note for the $180.00; had it been regarded a new debt at the date of the $180.00 note, the $100.00 would have been exempt under the homestead exemption act, but it was held to be the same old debt, unpaid, and was not exempt.

In *Slocumb's adm'r* v. *Holmes's adm'r*, 1 Hurd, (Miss.) 139, it was held that when an account is closed by note for the amount a recovery cannot be had on the account; but resort must be had on the note given for the amount of the account.

In *Gion* v. *Doherty*, 43 Miss. 538, it appeared that G. gave his own promissory note for the amount of an account against his wife for goods sold on credit, and for which her separate estate was liable under the married woman's law of 1857, it was held that an action could still be maintained on the account against the wife. The acceptance of security of equal dignity, is of itself no extinguishment of an antecedent debt. *Aliter* if there be an agreement of the creditor to accept it absolutely as payment and incur the risk of its being paid. See also, *Lear* v. *Freedlander et al.* 45 Miss. 559.

In *Insurance Co.* v. *Smith*, 6 Harris & J. 166, it was held that if a debtor give his promissory note, on ac-

count of a pre-existing simple contract debt, the note does not merge or extinguish such debt, but the creditor on non-payment of the note, may resort to the original contract.

In *Glenn* v. *Smith*, 2 Gill. & Johns 493, Buchanan, C. J., in delivering the opinion of the court, said, " the general rule is that the acceptance of a security or undertaking of equal degree is of itself no extinguishment of the former debt. Thus the acceptance by a creditor from his debtor, of his promissory note, for an antecedent simple contract debt, does not extinguish the original debt, (both being of equal degree in the eye of the law) if it remains in the hands of the creditor unpaid, and he can produce it to be cancelled or show it to be lost. But he will not be suffered to recover on the original cause of action, unless he can show the note to have been lost, or produce it upon the trial to be cancelled." *Berry* v. *Griffin*, 10 Md., 27; *Matthews & Zollieffer* v. *Reese & Ross*, 20 Md., 348.

In *Elwood* v. *Diefendorf*, 5 Bosw. 398, it was said, "*It seems* that the promissory note of the debtor or of one of two or more joint debtors, given for a precedent debt, is not a satisfaction of such precedent debt, even although the creditor expressly accepts the note in satisfaction."

In *Burdick* v. *Greene*, 15 Johns. 247, it was held that "a plea to the common counts *in assumpsit*, that after making the promises in these counts mentioned the defendant made and delivered to the plaintiff his promissory note for the identical promises, which the plaintiff received in full satisfaction, and afterwards endorsed and delivered the note to A. B. is *bad*; for the receiving of a promissory note and endorsing it to the third person does not extinguish the *original cause of action*, provided the payee can show it to be lost, or can produce it on the trial to be cancelled." See *Porter* v. *Talcott*, 1 Cow. 359.

In *Central City Bank* v. *Dana & Sims*, 32 Barb. 296, it was held, that " the giving of a promissory note by a

debtor without any additional security, does not pay or satisfy the original debt. Although it is a payment *sub modo*, yet the creditor may always sue and recover upon the original consideration, upon producing and cancelling the note at the trial."

In *Cole* v. *Sackett*, 1 Hill 516, it was held, that "the promissory note of a debtor, given for a precedent simple contract demand, will not operate as payment, so as to preclude the creditor from suing on the original consideration, though given under an express agreement that it was to be received in full satisfaction and discharge."

Cowen, Judge, in delivering the opinion of the court, said : " It may be considered however, at present, as entirely settled, that to operate as a satisfaction, the promise must be that of some third person, in other words, something over and above the original debt. A promise by note is a security of no higher degree than an implied promise ; and the logic of these pleas is no more than saying, 'your precedent debt is discharged, because I promised to pay it in another form, and you accepted the latter promise as a satisfaction.' What consideration is there for such an acceptance ? The new promise to do a thing which the debtor was bound to do before, a thing which he now refuses to do because he had promised again and again to do it. In these pressing times there are, I apprehend, few debts which on such a theory are not in danger of being barred much short of the statute of limitations ; for creditors, however unwilling, are many times obliged to accept promises as the only satisfaction they can obtain for the present. It is entirely settled that a promissory note of the debtor, in no way affects or impairs the original debt unless it be paid. The creditor may, notwithstanding, recover on the original consideration, surrendering or cancelling the note at the trial. The note is a mere liquidation of the demand, and it being the duty of the debtor thus to liquidate and secure the demand, nay, to do more, it fol-

lows that an acceptance, or even an express agreement to accept in consideration of such a shortcoming, is a *nudum pactum.*" This was an action of *assumpsit* containing the common counts including an account stated. A special plea averred that after the amount had been found due the plaintiff, and before the commencement of the action, that part of the amount was paid in cash, and for the residue, the note of defendants was given, which the plaintiff accepted in *full satisfaction and discharge.* It is not said in the plea that it was in discharge of the debt, but it is presumed that it was in discharge of the original contract, because it is not claimed in the plea that the note had been paid.

This case was cited with approbation in *Lazier* v. *Nevin &c.*, 3 W. Va., 622, in which case the court held: "It is well settled that in a suit against a party when it appears that he had executed to the plaintiff a subsequent note for the same debt, while the subsequent note is no bar to the suit, the plaintiff cannot recover, without producing or accounting for the subsequent note" *Cole* v. *Sackett*, 1 Hill, 516 ; *Toby* v. *Barb*, 5 Johns. 68 ; *Alcock* v. *Hopkins*, 6 Cush. 484. But such cannot be the rule in a case like this where the debtor obtains money for which he executes his own note, and as further security places in the hands of the creditor a note of a third party."

In *McGuire* v. *Gadsby*, 3 Call 204, it appeared that Gadsby had executed his note to McGuire for $550.00, after the said note became due, by an agreement between the parties, Gadsby executed to McGuire eleven small notes of $50.00 each for the debt of $550.00, evidenced by the original note, which smaller notes extended the time of the payment, and fell due at different times; that three of the smaller notes had been paid by the defendant; that after the last of the smaller notes became due and default in payment made, McGuire brought suit in debt on the original note of $550.00. The only plea was *nil debet;* that it was admitted that the new notes were not given in consequence of any new contract

1877.
Special Term.

Bantz & Co.
v.
Basnett.

by the defendant with the plaintiff; and that a witness who was present at the making of the notes "gave it as his opinion to the jury that they were given by the defendant, and received by the plaintiff, in payment of the said note, on which the suit was brought;" that the witness further proved that four of the said smaller notes were at first given by the defendant, and the others afterwards; that he understood and so declared to the jury, "that the plaintiff in consideration thereof agreed to give up to the defendant the said note for $550.00."

The court on motion of the plaintiff instructed the jury that the giving of the smaller notes was no payment or discharge of the said note for $550.00 on which the plaintiff had brought suit. There was verdict and judgment for plaintiff, and the defendant appealed to the district court, which reversed the judgment, and McGuire appealed to the Court of Appeals.

Judge Roane in delivering the unanimous opinion of the court, said: "The question is whether the small notes were a payment or discharge of the former which was held by the plaintiff and not given up on receipt of the other? In point of justice there seems no difficulty. The plaintiff is in pursuit of a just demand, which he has recovered, and the present attempt is to subject him to costs and delay, for that he ought to commence a new suit or suits upon the small notes, in which the same principles, without a single essential change in the situation of plaintiff or defendant are to govern the decision. This attempt therefore ought to be supported by strict law, before it should receive the sanction of this Court. And how is the law? First: view it as an accord between the parties. It was truly said by the counsel that an accord cannot be given in evidence but must be pleaded; and he might have added that it must be pleaded with satisfaction too, that is that the thing substituted has been performed. In both points therefore the defendant has failed. He did not plead it, nor were the smaller notes paid. Next view it in the light of a *merger*.

1877.
Special Term.

Bantz & Co.
v.
Basnett.

Do the smaller notes extinguish the former? On this subject we take the law to be settled, that in order to make one instrument an extinguishment of another, the latter must be of higher dignity than the former, or must put the plaintiff in a better condition, neither of which is the case of those notes, all precisely of the same tenor and not sealed, nor do the latter place the plaintiff in a better condition than the former. They benefit the defendant indeed, by giving him a further day of payment, which he did not avail himself of, and cannot now turn that favor to the prejudice of the plaintiff, who did not sue till three months after the most remote payment was to have been made. Mr. Lee, the counsel, admitted the rule in general, but insisted that where there was an agreement to accept the latter notes in satisfaction of the former they shall have that operation; and this agreement was proved by the witness, as stated in the exception. Whether the jury would have found the fact of the agreement, upon the opinion and understanding of the witness, opposed by the circumstance of McGuire's having retained the original note and its not having been called for by Gadsby is uncertain; but admitting the agreement proved, Mr. Lee's cases do not apply.

"In *Clark* v. *Mundal*, 1 Salk. 124, the agreement to take a bill of exchange for the debt, which is to be an extinguishment of it, is made at the time of the original contract, the sale of the goods; but in that case a bill endorsed at or on a subsequent day was no satisfaction without payment. And to such Holt does not apply the exception of a special agreement. The 1 Esp. N. P. 49, takes notice of this, and says: ' A statute has altered the rule as to inland bills which declares them when accepted a satisfaction, if the person accepting does not take his due course to get them accepted and paid.; but if he does use due diligence he does not sustain the loss. A goldsmith's note received for money and not paid is no satisfaction without an express agreement that

it shall be received as cash.' *Ward* v. *Evans*, 2 Salk. 442.

"All these cases respect bills, orders and notes, wherein third persons are concerned. They do not, therefore, shake the authority of *Roades* v. *Barnes*, 1 Burr. 9, and *Cunber* v. *Wane*, 1 Stra. 426, that a promissory note shall not be extinguished by a subsequent promissory note given by and to the same person, which is the case before the court.

"We think, therefore, that the direction of the hustings court, of Alexandria, was right and that the judgment of the district court ought to be reversed, and that of the hustings court affirmed."

In *Herrington* v. *Harkins's admr's.* 1 Rob. 591, suit was brought on a judgment, and the defendant pleaded, " that by an agreement in writing between the parties the judgment was discharged and satisfied, by a new contract, for the payment of a sum in cash, which was then paid, and for the payment of the balance by deferred installments, whereby the said judgment was remitted and released, and accord and satisfaction thereof made." It was held by the Court of Appeals, that a demurrer to the plea was properly sustained by the court below.

In *McCluny & Co.* v. *Jackson*, 6 Gratt. 96, it was held that where "upon a settlement of an account, the creditor takes a negotiable note from the debtor, for the amount found due, and the note is discounted at the bank, for the creditor; and whilst the note is held by the bank and before it is due the debtor absconds, the creditor cannot sue out an attachment against the debtor for the debt due upon the account." In delivering the opinion of the court Allen, Judge, said upon the state of facts disclosed by the record : "Upon this state of facts it is not necessary to consider in this case, whether the making and acceptance of this negotiable security merged the simple contract, so that no action could be maintained for the original consideration. At the date of the attachment the note was a valid

security, held by a third party who had a right to call for payment; such payment would have extinguished the plaintiffs' demand *pro tanto*. Whether the acceptance of the note under such circumstances amounted to an extinguishment, or discharge of the original debt or not, the remedy was suspended during the currency of the security. The plaintiffs could have no right of action before the dishonor of the note."

In *Moses* v. *Trice*, 21 Gratt. 556, it was held, that "the note being a renewal of a former note, and all the notes having been given for the same loan of money, T. might have sued on the original note, or for money loaned." This agrees in principle, with *Parker* v. *Cousins*, 2 Gratt.; *Gadsby* v. *McGuire*, 3 Call; *Herrington* v. *Harkins's adm'r*, 1 Rob.; and I have searched diligently in the early reports of that great and good Court of Appeals of the mother State, and I have been unable to find a departure from the principle as above laid down. What was my surprise to find the principle abandoned, in *Blair* & *Hoge* v. *Wilson*, 28 Gratt. 165, and what my *mortification* to find the principles in those old cases overturned without even a friendly notice; to see them departed from, without even a regretful farewell? We presumed of course that the decisions of the court to which we have referred were not overlooked by the court in the case in 28 Gratt. According to our understanding of the last named case, it was not necessary to overrule decisions formerly made by the court to reach the conclusion arrived at in the case; as it is obvious that the decision itself is right, but a wrong reason given for it. As the record shows, the payee of the check was guilty of gross laches in not presenting it for payment, and by his negligence the loss should have fallen on him, according to the authorities we have before cited in this opinion. But we think the court was clearly wrong in saying, that " while, however, the giving of a check by a debtor to his creditor, is generally presumed to be only a provisional or conditional pay-

*1877.*
*Special Term.*

Bantz & Co.
v.
Basnett.

ment of the debt for which it is given; yet such a check, by agreement between the parties, may be given and received *in full payment and absolute discharge and satisfaction of the debt.*" The learned Judge then says, " I do not find this proposition controverted anywhere, except in New York, where it seems to be held that such an agreement is invalid, because without consideration. The authorities in all the other States, seem to uphold such an agreement when made. * * * The authorities touching such agreement are collected and classified in 2 Parsons on Bills and Notes 159, 160, 161, 162, note 1; and as there given, relate mostly to bills of exchange and promissory notes. I see no good reason however, why the rule should not apply as well to a check as to a bill or note; nor why the agreement may not as well be implied as express."

The principle here announced is directly opposed to the Virginia decisions we have quoted; and the review we have made of the authorities will show that the principle is by no means confined to the courts of New York and Virginia. And what consideration, I ask, is there for such an agreement? A. owes B. a debt, A. gives B. his check for the amount of the debt; it is agreed between them, if you please, that the check is given and received in absolute payment of the debt; B. presently presents the check for payment, it is dishonored; is it not absurd to say that the check has paid the debt? The debt remains unpaid, and the agreement was without consideration, a mere *nudum pactum.* See *Miller* v. *Miller,* 8 W. Va. 542; *Feamster* v. *Withrow,* 9 W. Va. 296; *Same* v. *Same,* second appeal, 12 W. Va. 611; *Poole & Co.* v. *Rice,* 9 W. Va. 73; *Dunlap* v. *Shanklin,* 10 W. Va. 662, in which payment by paper is to some extent discussed.

### Remedy where the paper is not a payment.

In such case it is on the original consideration, but the paper must be surrendered on the trial to be cancelled

1877.
Special Term.

Bantz & Co.
v.
Basnett.

or its loss accounted for. And this has been permitted to be done in many cases, without any count in the declaration on the substituted note.

*Alcock* v. *Hopkins*, 6 Cush., was an action of *assumpsit* for goods sold and delivered, and it was shown that the bill of a third party had been given and negotiated, but which the plaintiff was compelled to pay ; it was held not to be payment under the circumstances of the case, and the court said, " that the only material question is, not whether the bill has been negotiated for value, but whether it is still outstanding, so that the parties are liable upon it, notwithstanding a recovery on the original claim. If the bill is still outstanding, so that the parties are liable, then a recovery cannot be had on the original account, but if the bill has been taken up, and is produced to be cancelled as in this case, then the party may recover on the account." *Hedge* v. *McQuaid*, 11 Cush. 352 ; *Bridge* v. *Batchelder*, 9 Allen, 394 ; *McConnell, et al.* v. *Stetsmus, et al.* 2 Gilman, 707 ; *Rayburn* v. *Day*, 27 Ill, 46.

*Hamden* v. *Mendisabal*, 2 Car. & Payne, 20 , was an action of *assumpsit* for goods sold. A witness proved an admission of a balance due to the plaintiff for goods; but from his cross-examination it appeared that bills of exchange had been given for those goods, which bills had been paid away by the plaintiff, but had been subsequently got back by him, and were at the time of the trial, lying protested in the hands of his agent at Cadiz. It was objected by counsel for defendant that as the plaintiff had passed away the bills, he had made them his own, and could not recover for the goods sold, without delivering them up. Best, C. J., said, "If the bills had gone from the plaintiff's control the objection would be unanswerable. The plaintiff might have them here now, but you could not make him deliver them up till the payment of the money. If the bills are not forthcoming you may have equitable relief in another place. A man having a bill may

104

declare for goods sold saying, I will not go on the bill. The verdict must be for the plaintiff."

In *Dangerfield* v. *Wilby*, 4 Esp., 158, the declaration stated that the defendant was indebted to the plaintiff £10 on a promissory note, for that sum made by the defendant, payable to the plaintiff, with the other counts for money had and received, and a count on an account stated. The plaintiff did not produce any promissory note, which he stated to have been lost, nor offer any evidence of its being destroyed or not in existence, but gave in evidence that the defendant had, on the money being demanded, apologized for not paying the £10 on account of the note, and then rested his case.

On objection being made, the plaintiff's counsel contended that the note was only evidence of the debt for money lent, or otherwise claimed, and that he should, therefore, be at liberty to abandon the note, and go for the consideration of it, which was in the present case for money lent.

Lord Ellenborough said he was of opinion that the plaintiff was not so entitled, " for as the note for anything that appeared in evidence, was in existence, it still might be in circulation, and the defendant be liable to be called on to pay it, so that he might be subjected twice to the payment of the same demand. It was therefore incumbent on him to show it to be lost so that the defendant should not again be subjected to the payment of it. As to any demand therefor on account of the note he thought the plaintiff not entitled to recover." The plaintiff was non-suited. *Smith* v. *Rogers*, 17 Johns. 340.

*Burdick* v. *Greene*, 15 Johns. was an action of *assumpsit*. The declaration contained several counts. 1. On a promissory note, dated the 21st of June, 1810, made by defendant, and payable to the plaintiff or order, on the 1st of August next thereafter for $1,525.00. 2. The second count after setting forth the note, stated that the plaintiff endorsed it to Joel Ketchum or order, who on

the 31st of July, 1816, did under his hand and seal, transfer, assign and set over to the plaintiff, the said note, together with all his right, title and interest therein, by reason whereof the defendant became liable to pay, and being so liable, in consideration thereof undertook, &c. 3. The money counts. 4. *Indebitatus assumpsit* for goods sold. 5. A *quantum valebat* on same.

The defendant pleaded. 1. *Non assumpsit.* 2. *Actio non accrevit infra sex annos.* * * * To the third, fourth and fifth counts, the defendant pleaded, that after making the several promises in these counts mentioned, to-wit on the 21st of June, 1810, the defendant made his promissory note for the same identical promises and delivered it to the plaintiff, by which note for value received, he promised to pay the plaintiff or order $1,525.00, on the 1st day of August then next, which note the plaintiff received in full satisfaction of the said promises, and that the plaintiff afterwards endorsed and delivered it to Joel Ketchum for value received. To this last plea the plaintiff replied : " That after the 21st of June, 1810, and before the commencement of this suit, to-wit : on the 31st of July, 1816, Ketchum, by his instrument in writing under his hand and seal, assigned the said note with all his right, title and interest to the plaintiff, averring that the note had not been paid ; whereby the endorsement to Ketchum became cancelled, and the plaintiff restored to all his rights in the premises, as though the endorsement had not been made. " The defendant demurred to this replication, and the plaintiff joined in the demurrer.

The court held, Spencer, J. : " The plea is defective as a bar to an action on the original consideration, for we have seen that the mere giving a negotiable note, or its endorsement to a third person does not extinguish the original cause of action, provided the payee in the note can show it to be lost, or can produce it to be cancelled ; and *non constat* that it cannot be done in this case." Judgment was for the plaintiff. *Holmes & Drake* v. *De Camp,*

1 Johns. 33; *Raymond* v. Merchant, 3 Cow. 147; *Hughes* v. *Wheeler*, 8 Cow. 77; *Dayton* v. *Troll*, 23 Wend. 845; *Spear & Patton* v. *Atkinson*, 1 Ired. 262.

In *Moses* v. *Trice*, 21 Gratt. 556, it appeared that M. borrowed money, (Confederate) early in 1864, of T. and executed his negotiable note endorsed by D. for the amount, payable in ninety days at the Bank of Virginia. The note was renewed from time to time, M. proposed to pay off the note to T. but at the request of T. renewed the note again, upon the promise of T. that he would deposit the note in bank for collection, and before the note fell due M. deposited more than the amount of the note in the bank, where it remained until the bank failed. A few days before the note was due the bank was burned out, the note not having been deposited in the bank. It was held that M's. offer to pay, he consenting to renew the note, and his depositing the money in bank, was neither a tender, nor accord and satisfaction, and he is still liable to pay the amount due upon the note. The note being a renewal of a former note, and all the notes having been given for the same loan of money, T. might have sued on the original note, or for the money loaned, and therefore he is entitled to recover, though at the time the note sued on fell due, Confederate currency was worthless.

From the numerous authorities cited, conflicting and irreconcilable as many of them are, what is the proper rule to be laid down in a case where one note of the same character is given for a former by a debtor to his creditor?

The doctrine of *merger* certainly cannot apply; because there can be no *merger* where the contracts are equal. It cannot be a payment of the debt, because from the very nature of the transaction the old debt, for which the new note is given remains. It seems absurd to say that a promise to pay a debt, is discharged by another promise of the same character made by the same party to his creditor. I can easily understand how a debt from B. to

1877.
Special Term.

Bantz & Co.
v.
Barnett.

A. can be discharged by the note of C. to B. where it is agreed between the parties that it shall be taken in payment. Because that is a security of a different character entirely, and there may be the best consideration for it; and it is easy to comprehend how that might be a complete payment or discharge of the debt itself, and it might be shown under the plea of payment, because it is a payment of the debt. The right of action of A. against B. is gone, the debt is paid. So if paid by giving chattels, or anything of intrinsic value by the debtor to his creditor; or it may be paid by the debtor, paying a debt of the creditor to a third party, at the request of the creditor, as was done in the case of *Huffmans* v. *Walker*, 26 Gratt. 314, cited by Bro. Moore in his opinion. In all these modes there may be a payment of the debt, a complete discharge of the debtor by the creditor.

But is it not a solecism to say, that if A. owes B. $100.00, which is evidenced by A's note for that amount, due sixty days after date, that the debt, at the end of the sixty days is paid, by A. giving to B. another note of precisely the same character to be due at the end of the next sixty days? The debt is unpaid; if no fraud has been committed, the remedy upon the note has been suspended for sixty days, but that is the only effect thereof, the debt itself is no nearer paid, than when it was first due. Even if there was an express agreement between the parties that the second note should be taken in absolute payment of the debt, it would amount to nothing, because it is contradicted by the new note itself, which is but another evidence of the same old subsisting debt, which will not *down*, until it is either actually paid or released. And besides there is no consideration for such an agreement, it is a mere *nudum pactum*.

Bro. Moore to sustain his opinion, cites *Poole & Co.* v. *Rice*, and *Dunlap* v. *Shanklin supra*, but there is nothing adjudicated in either of those cases, contrary to the views herein expressed; the point was not involved in either of the cases, and was not decided. It is there

said, that a note of a debtor or of a third party, could not be a payment of a pre-existing debt, unless it was expressly agreed between the parties that it should be a payment; but it was not decided, that in a case like this, even though expressly agreed by the parties, it would be a payment of the debt. In both cases the court was guarded in its language, like the Court of Appeals of Virginia in *McCluny* v. *Jackson*, 6 Gratt. 96.

If, then, in the case we have been considering, the giving of the note is not a payment, can it be an accord and satisfaction ? " Accord and satisfaction is a good plea, but is must be performed at the time of the plea. A bare accord without satisfaction is no plea. Where accord and satisfaction is pleaded, it must appear to the court to be a reasonable and good satisfaction, and be accepted by the plaintiff as such, such as a better security and so on. A bond may be pleaded in bar of a simple contract debt." Esp. N. P. 147 ; see 2 Chitty Pl. 288 ; *McGuire* v. *Gadsby*, 3 Call 204.

In numerous cases, as we have seen, pleas of accord and satisfaction, setting up the giving of a second note of like character, for the first, have been held bad, on the ground that there was no *satisfaction* of the cause of action. True there are cases to be found the other way, but we do not think they are sustained on principle.

If there was no fraud in the transaction, and the first note was actually given up to the debtor, under an agreement that the second note should be the only evidence of the indebtedness, and there was nothing in the note or its execution to vitiate it, no suit could be brought on the original indebtedness; but where both notes are retained by the plaintiff, and the second note is due, although there was an express agreement between the parties at the time the second note was executed, that the original note should be given up to the debtor, suit may be maintained on the original note. *McGuire* v. *Gadsby*, 3 Call 204.

In such a case however, in order that there might be

record evidence, that the plaintiff at the trial and judgment had both notes in his possession, the declaration should contain counts on both notes, and both notes should be filed with the declaration or their loss accounted for.

The creditor should not be permitted in any case to recover on the original note, whether it be negotiable or not, unless he also files, with his declaration the subsequent note, or accounts for its loss. For otherwise he might be permitted to recover on the original note, and the defendant be liable to be made to pay the second if negotiable to an innocent holder for value, or if not negotiable be liable to be sued thereon, and put to inconvenience and expense in defending the suit thereon.

But if both notes, whether negotiable or not, are in the hands of the plaintiff, and he files them with his declaration, he recovers his debt upon the one or the other, it is immaterial which; the whole matter is settled and no one is injured. I have no hesitation in saying, that the execution of the $408.00 note in the case before us, and giving the receipt would not constitute a payment of the residue of the $1,000.00 note, sued on if it had been executed, and the $600.00 paid after the $1,000.00 note was due. Of course the money paid to the assignor even after the assignment, without notice to the debtor of the assignment, would be a good payment and could have been properly proved under the plea of payment.

· The taking of the $408.00 note, under such circumstances, and giving the receipt would not be an *accord* and satisfaction according to the principles above enunciated. The $408.00 would be still due and unpaid by the debtor and could be recovered, on the original note by the assignors, provided they had in their possession the $408.00 note, or could account for its loss, and had either counted on it in the original or an amended declaration.

In such a case the plaintiff ought not to be permitted to

recover, unless he has at the trial, to be surrendered, the original note, or satisfactorily accounts for its loss. But if the plaintiff has possession of the note, or can satisfactorily account for its loss, no harm can possibly result to the defendant by permitting the plaintiff to amend his declaration, and add a count on the second note; because the defendant can then file specifications of payment and off-sets, if he has any, either against the assignor before notice of assignment or the assignee since. He would not be barred by the statute of limitations, unless the off-set accrued either more than five years before the suit was brought, or if after suit was brought, more than five years before it was filed. *Tringer* v. *Pollard*, 5 Gratt. 460.

But in the case before us it appears that the $600.00 was paid before the $1,000.00 note was due, and the note for $408.00, due four months after date, which was far beyond the time the $1,000.00 note would become due, executed, and an express agreement made between the maker and payee of the $1,000.00 note, that it should be extinguished by the new agreement, and surrendered to the maker. Is this agreement founded on a valuable consideration; and is it binding on the parties? We think it is; as the payment of the $600.00 before it was due, was a benefit to the creditor, and an inconvenience to the debtor, and was therefore a valuable consideration for the new agreement, and the execution of the new note in extinguishment of the old. *Pinsol's case*, 3 Co. R. 238; *Uhler* v. *Applegate*, 2 Casey 140; *Austin* v. *Darwin*, 21 W. 38; *Goodnow* v. *Smith*, 18 Pick 414.

The instruction of the court was, therefore, erroneous and the judgment must be reversed, and a new trial granted.

GREEN, PRESIDENT:

The question presented to our consideration by the record in this case, is what is the effect of the taking, by

the payee of a note, of another note from the maker. Such note may be received by the creditor: first, as collateral security; or second, as conditional payment; or thirdly, as a discharge and satisfaction of his original note. When it has been accepted as collateral, security the payee of the original note may at once sue on it without waiting till the collateral note is payable. When it is received as conditional payment, that is when it is to be in full satisfaction of the original note provided or when the accepted note is paid, the creditor must look primarily to this note accepted by him as the fund from which his satisfaction is to come and therefore it postpones the personal liability of the maker of the original note, till the note accepted by the payee is payable. Till it falls due the debtor's liability is suspended. But when the note is accepted as a discharge and satisfaction of the original note, the obligation of the maker of the original note is immediately extinct; and no suit can therefore be maintained on the original note, though it may not have been surrendered to the maker. If the agreement is not express to receive of the maker the new note either as collateral security, as conditional payment, or as satisfaction and discharge, the question arises, what is the agreement which the law will then imply? Upon this point there has been much contrariety of opinion among jurists. According to the views of many judges the agreement to be implied depends very much on the character of the new note accepted by the creditor, and will vary as the new note varies; different presumption arising when it is the note of the original debtor or one of several original debtors, and when it is the note of a third person; and especially will a different presumption of the agreement to be implied arise, when the new note is unnegotiable, and when it is a negotiable note. Other judges deny that these variations in the new note affect the presumptions of the agreement to be implied. Or if they admit them to have any effect they give to these variations in the char-

acter of the new note accepted, much less effect than others. The numerous authorities cited by Bro. Johnson, illustrate the great variety of views which have been entertained as to whether in the absence of an express agreement in a particular case the law would imply that the note was accepted as collateral security, conditional payment, or satisfaction and discharge. When however these difficulties are all removed, as in the case before us, by the express agreement of the parties, no difficulty can remain, provided that the express agreement is legally a binding agreement ; for the effect of this agreement on the rights of the debtor and creditor which, I have stated above is of course the effect of such agreement on the rights of the parties when it is a legal and binding agreement. As these agreements are parol contracts, to make them valid and legally binding, they must be sustained by valuable considerations. When therefore the agreement is express the only controversy before the court has been, was there a valuable consideration to support the agreement of the parties, or was the arrangement made by them a *nudum pactum*. And on this question in particular cases, as the authorities referred to by Bro. Johnson show, there has been some diversity of opinion.

In this opinion I shall confine myself to the consideration of the question which arises when the creditor accepts from the maker of the original note, a note with an express agreement that it shall be in full satisfaction and discharge of the original note. In this case all the authorities agree that the right of the creditor to sue on the original note is forever and immediately gone, provided this express agreement is supported by a valuable consideration. The whole diversity in the decision of the courts in such cases is, whether in a particular case there is a valuable consideration to support the agreement or, whether it is a *nudum pactum*. All the authorities agree that if there be an express agreement to accept of the maker the note of a third person in full satisfaction of the original note, the delivery of such note to the payee

of the original note, is a complete satisfaction thereof, as the delivery of such a note of a third person is a consideration sufficient to support the agreement, that it shall be a full discharge of the first note. But if the original note or other obligation not under seal, such as that of partners, be the note or obligation of two jointly, whether the acceptance by the creditor of a note of one of his debtors, is a sufficient consideration to support an express agreement to take this new note in full discharge and satisfaction of the original note and obligation, and thus to discharge the other debtor of all liability, has been to some extent a question of controversy. Thus in *Cole* v. *Sackett*, 1 Hill (N. Y.) 516, and afterwards in *Wydell* v. *Leer*, 5 Hill (N. Y). 448, it was held that in such a case the agreement to accept the note of one of the joint debtors as a full discharge of the original debt was a *nudum pactum*, and therefore such agreement could not have the effect stipulated for by the parties. But this last case was reversed in the court of error. See 3 Denio 410. And subsequently the Supreme Court of Appeals of New York disapproved the case of *Wydell* v. *Leer*, in *Livingston* v. *Radcliff*, 6 Barb. 202. So in England the decisions on this point have not been harmonious, as will appear from the English authorities referred to in Bro. Johnson's opinion, but whatever doubt on the question may have been once entertained in England, it has been conclusively settled by the case of *Lyth* v. *Ault & Wood*, 7 Ex. Ch. 669 (decided in 1852), in which it was decided that the acceptance by a creditor of the sole and separate liability of one of two or more joint debtors is a good consideration for an agreement to discharge all the other debtors from liability. In this decision all the Judges concurred after considering the previous cases and disapproving of those which were in conflict with their views. It is said in Smith's L. C. 6 Amer. ed., top page 614, side page 454, vol. 1, that in an Iowa case, the Judge who delivered

the opinion thought such and agreement invalid, and to sustain it, relied on the decision in *Wydell* v. *Leer*, 5 Hill 448, which case we have seen was afterwards overruled, and such an agreement held valid by the subsequent decisions in New York. I have not been able to see this Iowa case, it is referred to as *Fentrass* v. *Markle*, 2 Iowa 553, but this is a misreference. But the position of the recent English cases that the acceptance by a creditor of the sole and separate liability of one of two or more joint debtors is a good consideration for an agreement to discharge all the other debtors from liability has been, it would seem, generally approved in the United States. And there are a number of decisions in which the principle has been expressly decided, or in which it has been assumed by the court to be indisputable, the controversies turning not on the correctness of the law as thus laid down, but upon the question whether in th particular case there was proven such an agreement, some of the courts holding it must be expressly proven; all admitting that the presumption is against such an agreement, but some holding that while such an agreement must be established by the party claiming the benefit of it clearly, yet it need not be proven that such an express agreement was entered into; but that it is a fact which should be submitted to the jury and may be established by any clear and satisfactory proof. This position that by an agreement made by a creditor to accept one of two or more joint debtors, he may discharge from all liability others who had been jointly bound, and that a note of one of the joint debtors accepted by such creditor is a sufficient consideration for an agreement to hold as discharged and satisfied the original joint obligation is thus held expressly decided or assumed to be law in the Supreme Court ot the United States. See *Mandeville* v. *Jameson*, 6 Cranch 253; in Pennsylvania, see *Davis* v. *Desaque*, 5 Wharton 530, and other cases referred to in Bro. Johnson's opinion. In Connecticut see *Bonnell* v. *Chamberlain*, 26 Conn.

481; *Beam* v. *Barnum*, 21· Conn. 200. In Illinois
see *Rayburn* v. *Day et al.* 27 Ills.47. In South
Carolina, see *Kinsler*, &c. v.· *Pope*, 5 Strob. 126.
In Virginia the question has not been decided, it
being simply held in *Parker* v. *Cousins*, 2 Gratt. 373,
388, that the taking of a new security will release the
other, if in any case, *only* where there is an agreement
express or implied that he should be released. The
question under consideration by me not being fairly pre-
sented by the record, the court in that case declined to ex-
press any opinion upon it. See p. 388. The reasons upon
which these decisions are based are to my mind entirely
satisfactory. They are perhaps as distinctly given in the
case of *Lyth* v. *Ault & Wood*, 7 E. Ch. 669, as any where
else. It is clear that any debt may be discharged by the
debtor agreeing to give something different in its nature
from the debt if the debtor agrees to accept it as a dis-
charge. The courts cannot enquire into the subject mat-
ter of the new agreement; the parties may therefore
agree that a horse, a bill of exchange, a note or any other
commodity may be thus given and received in discharge
of a debt. The law leaves the parties to their bargain.
The new note must not in its legal effect leave the credi-
tor and debtor in the precise position they were prior to
its being given, nor do I suppose that a part payment of
a debt *after it is due* can be a consideration for agreeing
that the entire debt shall be thereby discharged. As
such part payment must be regarded as but partially per-
forming a duty already imposed on the debtor. But
this even is controverted by highly respectable authority
and I have not formed and do not mean to express any
decided opinion on this point. If the new note is given
by one of the joint debtors for the then full amount due
in discharge of the joint debt and the creditor agrees to
accept it as such, it must be regarded as an agreement
binding on him because it is sustained by a sufficient
consideration. It is true that the maker of the new note
was already bound for the full amount, but he was bound

1877.
Special Term.

Bantz & Co.
v.
Basnett.

in a different manner jointly with another, and though the joint obligation of two would generally be regarded as better than the several obligations of the joint debtors only, yet this is not necessarily so. The mode of enforcing the one and the other are different. It is more convenient to the creditor to sue one than it is to sue two as he must do on the joint obligation. So in case of one of two joint debtors dying, the trouble of enforcing a joint debt is greater than enforcing a several debt due from one party. The creditor may have considered that a benefit might result to him in this or some other way by accepting the several notes of two joint debtors instead of and as a substitution for their joint note and he has done so and has agreed that the joint note should be discharged thereby. The courts must regard him as bound by such an agreement as the possibility that he might be benefited by this agreement, is a sufficient consideration to support the agreement. The courts always refuse to enquire or consider the amount of the consideration. The parties must abide by their parol contracts, if there be any consideration however small or uncertain in its character to sustain them. The new note placed on one of the creditors an obligation which though the same in amount as his former obligation could be enforced against him in a simpler and perhaps speedier manner. It was therefore different from his former obligation; and if so, its giving is a sufficient consideration for the agreement, that thereby the former obligation should be held to be satisfied and discharged. If such an agreement has really been made, it would naturally and properly be carried out by the surrender of the original joint note; and if it be not surrendered, this raises a strong presumption that such was not the real agreement; and the courts all hold that the proof to establish such an agreement must be clear and explicit. But if so established, such an agreement, like all other agreements made by parties based on a sufficient consideration, should be enforced. But strange

1877.
Special Term.

Bantz & Co.
v.
Basnett.

as it may seem, some courts, while holding that an express agreement to receive in full satisfaction of a joint note, the note of one of the joint debtors, payable at a future time, is not a *nudum pactum*, but should be enforced as based on a sufficient consideration, yet, at the same time, hold that if such a new note is signed by all the original debtors, though expressly agreed that it shall be in full satisfaction of their prior joint obligation, it can not so operate, because they hold that such an agreement is a *nudum pactum*. This inconsistency is shown by the decisions in New York. See *Cole* v. *Sackett*, 1 Hill 517; *Putnam* v. *Lewis*, 8 Johns. 389; *Frisbee* v. *Lorned*, 2 Wend. 450, 452; *Myers* v. *Wells*, 5 Hill 463, and other cases cited by Bro. Johnson. The New York courts have shown much astuteness in discovering a sufficient consideration to support an express agreement, whereby the note of one of two joint debtors can be held to be a complete satisfaction and discharge of the joint note of the two debtors. Holding that the mere fact that the creditor gets thereby a remedy,, which under some circumstances might be more convenient and speedy, a sufficient consideration to support such agreement. But they deny that there can be any consideration to support an express agreement that the note of a debtor payable at a future day, shall be a satisfaction and discharge of a note of a debtor already due and payable. It seems to me that the consideration to support such an agreement is much more obvious in such case than in the case in which the New York courts hold it to exist. May it not be the interest of the creditor when his debtor's note is due. to get the debtor to agree not to pay it at once, but to extend the time of payment, the debtor obliging himself to pay interest on the amount for the time of the extension? And if the debtor will consent to give a new note payable at a distant day, thereby obliging himself to waive his right to pay off his debt at once and further obliging himself irrevocably to pay interest on. the amount for the extended time, may he not

legitmately in consideration of this advantage to his creditor and disadvantage to himself, stipulate that this new note shall be in full discharge and satisfaction of his prior note and that it shall be surrendered, and if this is assented to expressly by the creditor, can such an agreement be regarded as a *nudum pactum*? Is there not obviously a sufficient consideration to support it? But this is not the only inconsistency in the New York cases. They hold that the accepting by a creditor of a debtor's note payable at a future time is a sufficient consideration to support an agreement to suspend the collection of the original note. See *Myers* v. *Wells*, 5 Hill 463; *Frisbee* v. *Turned*, 21 Wend. 350, and other cases cited by Bro. Johnson. If then these advantages and others which in such cases are pointed out by these New York cases are, as they hold they are, a sufficient consideration to sustain an agreement to give time, they must be certainly sufficient to sustain any other lawful agreement, which the parties choose to make, based upon them, as for instance an agreement that they shall be in full discharge and satisfaction of the prior note and that it shall be surrendered. But this the New York courts singularly refuse to admit though it seems to be a necessary conclusion from their own decisions. The New York decisions are reviewed in Smith's Leading Cases vol. 1 p. 456, the top page 616, 617, of 7th Am. ed., and the editor concludes that they are manifestly contradictory. Whatever doubt may have been entertained at one time, it is now clearly established in England that if a debtor gives his own note payable at a future time in discharge and satisfaction of a previous obligation due, and it is accepted in this way by the creditor by express agreement, such an agreement is not a *nudum pactum*, but is valid and binding and will operate as intended by the parties. See *Sards* v. *Rhodes*, 1 M. & W. 153, *Sibree* v. *Tripp*, 15 M. & W. 23. And this position which is held by the English courts is very generally held to be correct by the courts in this country. The law has been either so ex-

pressly decided, or it has been assumed as unquestionable law in many of the States. As in Minnessota. See *Keogh* v. *McNit*, 6 Minn. 513; in Pennsylvania, see *Darlington* v. *Gray*, 5 Wharton 473; *Winkley* v. *Bell & Sterling*, 9 Watts 273; *Hays* v. *Chung*, 4 Watts 452. In Massachusetts, see *Johnson* v. *Johnson*, 11 Mass. 359; *Thatcher* v. *Densmore*, 5 Mass. 299. In Maine, see *Varner* v. *Inhabitants of Nobleborough*, 2 Greenl. 121; *Descadella et al.* v. *Harris*, 8 Greenl. 298. In North Carolina, see *Ligon* v. *Dunn*, 6 Jindell 138. In South Carolina, see *Logan* v. *Ashley*, 1 Rich. 36. In Connecticut, see *Bonnel* v. *Chamber*, 21 Conn. 487. In Vermont, see *Babcock et al.* v. *Hawkins* 23 Vt. 561. In Iowa, *McLaren* v. *Hull et al*, 26 Ia. 297. In Wisconsin, *Eastman* v. *Porter*, 14 Wis. 39. In Illinois, see *Rayburn et al.* v. *Day*, 27 Ill. 46. In Mississippi, see *Given* v. *Doherty*, 43 Miss. 538; *Lear* v. *Frieldander et al.* 45 Miss. 559. There is a case in Kentucky which is in opposition to these numerous authorities apparently, I refer to the case of the *Bank of the Commonwealth* v. *Letcher*, 3 J. J. Marshall 195, but the authority of this decision is much weakened by the decision of the same case when it was again before the court. See *Letcher* v. *Bank of the Commonwealth*, 1 Dana 82. See also *Castleman* v. *Holmer*, 4 J. J. Marshall 1, and *Kibbey* v. *Johns*, 7 Bush. 244, which Bro. Johnson regards as contradictory, but which may perhaps be reconciled. The decisions in Maryland referred to by Bro. Johnson• *The Jones Insurance Co.* v. *Smith*, 6 H. & J. 166; *Berry* v. *Griffin*, 10 Md. 27; *Glen* v. *Smith*, 2 G. & J. 493; *Matthews Zollenhoffer* v. *Dare & McClure*, 20 Md. 248, while they show that the Maryland Court of Appeals hold that the receipt of a debtor of a note from his creditor, even of a third person, will never be regarded as in satisfaction and discharge of a previous debt, unless the evidence that it was so intended be very clear and explicit, and that even a receipt which states it to be in payment of the debt would be insufficient,

such payment be even then held to be conditional not absolute payment. And where the note accepted is that of the debtor himself, that will not by itself be regarded as an extinguishment of the debt, yet there is nothing in those decisions, or in any opinion rendered in them, that holds that if the creditor accepted the note of the debtor under an express agreement that it should be in discharge and satisfaction of his debt, that it would not operate in that manner. Those authorities establish the position that an express agreement to accept the note of a debtor payable at a future day, in discharge of an original note then due, is not a *nudum pactum*, but is an agreement supported by a sufficient consideration, and therefore valid and operative as intended by the parties. In opposition however to this position sustained by these numerous authorities, there is one decision in Virginia; which however we will presently show has been overruled in effect by a more recent decision of the Court of Appeals in Virginia. The case to which I refer is the case of *McGuire* v. *Gadsby*, 3 Call 234. The opinion of the Court has been quoted at length by Bro. Johnson, in his opinion. It will be observed that the court in its opinion, is particular to state that the small notes given in satisfaction of the original note, were all past due, and that the suit was not brought till three months after the last of the small notes had become due. I infer therefore, that the court considered that no suit could be successfully brought on the original note till after the small notes were all due. And that the giving of them and the agreement to accept them as satisfaction, operated as a conditional payment, and suspended, till the small notes became due, the plaintiff's right of action on the original note. If this be so in the opinion of that court, the agreement of the parties was not a mere *nudum pactum*, for it operated to suspend the original cause of action, and the court must therefore have regarded the giving of these small notes as a valid legal consideration. And if so, I can not see any reason

why it would not as well support an express· agreement to regard them as a satisfaction of the original note, as an agreement to suspend the right of action on the· original note for a time. The court seems to me to have involved itself in the same contradiction that the New York courts have since done. The only authorities referred to by the court to sustain its position are *Roades* v. *Barnes*, 1 Burr. 9 and *Cumber* v. *Wane*, 1 Stra. 426, which cases the court quote as establishing the position, "that a promissory note shall not be extinguished by a subsequent promissory note given by and to the same person." The first of these cases is very briefly reported, all that the court say is : " A promissory note cannot be pleaded in bar to an action upon a simple contract, though a bond may, because it is extinguished." The plea which was held bad is not given, and it may well have been that the new note was given and accepted on account of the previous debt, which plea would be unquestionably bad as has been repeatedly held by English cases, though we have seen that a plea that the new note was given and accepted in satisfaction and discharge of the original debt has been held good in England. I think we may well infer that the plea in that case alleged that the new note was given and accepted on account of the old debt, because the court adds, " though a bond may be pleaded in bar of an action on simple contract, because it extinguishes the debt;" and by all the authorities a bond would have that effect though given and accepted only *on account* of the debt. All I think that can be reasonably inferred from this decision is that a note would not of itself have this effect though a bond would. But I can see in this opinion of the court no indication of its opinion on the question whether an express agreement of the parties, that the original debt should be held extinguished, would or would not have that effect. The other case, *Cumber* v. *Wane*, 1 Stra. 426, is also reported in Smith's L. C. vol. 1, p. 439 to 595 7th Am. ed., and is there shown to

1877.
Special Term.

Bantz & Co.
v.
Basnett.

have been very generally disapproved. The case was this: " In an *indebitatus assumpsit* for £15, the defendant pleaded he gave the plaintiff a promissory note for £5 in satisfaction, and the plaintiff received it in satisfaction." It was held that this plea was bad. The court says: " As the plaintiff had a good cause of action, it can only be extinguished by a satisfaction he agrees to accept; and it is not his agreement alone that is sufficient, but it must appear to the court to be a reasonable satisfaction, or at least the contrary must not appear, as it does in this case. If £5 be, as it is admitted, no satisfaction for £15, why is a simple contract to pay £5 a satisfaction for another simple contract of three times the value. In case of a bond, another has never been allowed to be pleaded in satisfaction without the bettering of the plaintiff's case as by shortening the time of payment." This case, had it been good law, was not an authority to sustain the court in its decision in *Mc-Guire* v. *Gadsby*. For the reasoning of the court in the case of *Cumber* v. *Wane* expressly bases the decision on the ground that the new note was only one-third of the original debt, and which was, therefore, not a reasonable satisfaction. Whereas, in the case of *McGuire* v. *Gadsby*, the new notes were the full amount of the original debt. But in truth even the reasoning in *Cumber* v. *Wane* is very far from sound. It is not true that the court must regard the accord as a reasonable satisfaction. The very reverse of this is true. Whatever the parties agree to as a satisfaction must be so held by the court, without the least regard to its value. If any consideration at all exists, the agreement of the parties must be carried out without regard to the value of the consideration. The various authorities referred to by Smith in his notes in this case, show clearly the weakness of this opinion in this respect. After frequent expressions of dissatisfaction by English judges with the reasoning of the court in this opinion, the decision in this case was finally overruled in *Sibree*

v. *Tripp*, 15 M. & W. 23, in which it was held that a debt should be held to be discharged and satisfied by an agreement to receive notes of the debtor, payable at a future time, of less than the amount of the original note and the execution and receipt of these notes.

In *McGuire* v. *Gadsby*, the court say : "On this subject we take the law to be settled, that in order to make one instrument an extinguishment of another, the latter must be of a higher dignity than the former, or must put the plaintiff in a better condition," we might show that this is an imperfect statement of the law, but we may admit it as correct, understanding the phrase, " must put the plaintiff in a better condition" to mean, must be such as may put the plaintiff in a better condition. And the court must have so understood it, for otherwise the proposition of law laid down by them, would have been in plain violation of the fundamental principles of the law which defines what is a sufficient consideration to sustain an agreement. So understanding the court, its application of the law to the case before them was faulty. They say : "Nor do the new notes place the plaintiff in a better condition than the former note. They benefit the defendant by giving him a further day of payment." Are these just legal conclusions? May not the plaintiff have been benefited by the defendant agreeing and binding himself not to pay the debt for sixty days and to pay interest on it for that time? Might it not be that the plaintiff had no present or immediate use for the money, and the payment of it with the accumulating interest on it at a future day, when the plaintiff wanted its use, might not only have been an accommodation but a profit to him. It is very probable that this was not the case, and that the postponement of the time of payment was a mere accommodation to the defendant. But it is sufficient that it may have been a benefit to the plaintiff, and the court, as a legal proposition, could not say that these new notes placed the plaintiff necessarily in no better condition than the former note.

And yet on this assumption, the whole case was decided. I can not therefore regard this case as laying down the law correctly. It is in direct conflict with the English cases and with the overwhelming weight of American authority, and with sound reasoning. I have the less hesitation in holding this case to be not law, when I find the court of appeals of Virginia repudiating the principles upon which it is based, and thus in effect overruling it. This was done in the case of *Blair & Hoge* v. *Wilson,* 29 Gratt. 173, in which it was decided that a check given by a debtor to his creditor, in full payment and absolute discharge and satisfaction of a previous debt then due, will operate as such payment, and no suit can thereafter be maintained on the original debt, though the the creditor is never paid any part of the check, the debtor having funds in the bank, but the creditor being excusable for not presenting the check till after the bank failed, because of circumstances resulting from war. Judge Burks, delivering the opinion of the court says: "While however, the giving of a check by a debtor to a creditor is generally presumed to be only a provisional or conditional payment of the debt for which it is given, yet such check, by agreement between the parties, may be given and received in full payment, and absolute discharge and satisfaction of the debt.

"I do not find this proposition controvered any where except in New York, where it seems to be held that such an agreement is invalid, because without consideration. The authorities in all the other States seem to uphold such an agreement when made. In some cases it is said the agreement must be 'express' in others that it must be 'special,' while in many others it is said it may be 'express or implied.' The authorities touching such agreement are collected and classified in 2 Parsons on Bills and Notes 159, 160, 161, 162, note 2, and as there given relate mostly to bills of exchange and promissory notes. I see no good reason however why the note should not apply as well to a check as to a bill or note, and why the agreement may not as well be implied as expressed.

"To make the agreement however valid, whether it be express or implied it must of course be *bona fide*, and hence the check must have been drawn against sufficient funds, and if the check was so given and received, and there were sufficient funds to meet it, which would have been applied to its payment if presented on the day it was given, was not the debt sued upon extinguished by the check, and were the plaintiffs entitled to any recovery in the action? The declaration contained only common counts. There was no count on the check. And if the goods were paid for *absolutely* by the check, then the demand upon the account stated was thereby extinguished."

This decision is properly regarded by Bro. Johnson as in effect overruling the decision of *McGuire* v. *Gadsby*, and as I have before stated, I too have found no decisions which sustain that case, except those in New York and perhaps those in Kentucky. The authorities in all the other States are opposed to it so far as my investigations show. In the case of *Blair & Hoge* v. *Wilson*, the case of *McGuire* v. *Gadsby*, was not referred to, but in this the court acted as others have done. In none of the numerous cases in other States on this subject which I have examined is any reference made to *McGuire* v. *Gadsby* nor does the review of the authorities on this subject in Smith's Leading Cases, under the leading case of *Cumber* v. *Wane*, nor the American edition in its review of the authorities on this subject, under *Toby* v. *Barlow* and *Ohio* v. *Spencer*, notice this case. The conclusions reached by the editor of each of these leading cases, are substantially those I have reached. The other Virginia cases really throw no light on the subject under discussion. The case of *Herrington* v. *Hawkins's adm'rs*, 1 Rob. 391, was an action of debt on a judgment; the plea was that "the judgment was by a written agreement between the parties, discharged and satisfied by a new contract for the payment of $400.00 in cash, which was then paid and the balance to be paid by deferred installments, whereby the said judgment was released, and accord and

1877.
Special Term.
―――――
Buntz & Co v.
Basnett.

satisfaction thereof made." The Court of Appeals affirmed a judgment of the county court sustaining a demurrer to this plea. The court renders no opinion on this point. From the notes of the argument of counsel in the case by the reporter, I presume the appellants' counsel relied very little on this plea. He based his argument on other errors in the record, and principally on what he deemed patent defects in the declaration. I presume the fatal defect in this plea, and on which I suppose the court based its judgment, that a demurrer to it was properly sustained, was that the plea failed to aver that the $400 in cash, and the agreement to pay the balance in installments, was accepted by the plaintiff as satisfaction. The plea simply alleges that the judgment was discharged and satisfied by this payment of $400.00 and by the agreement of the defendant to pay the balance in installments. But it could not be so discharged and satisfied, unless the creditor accepted this $400.00 and this agreement to pay the balance in installments as a satisfaction of his judgment, and this the plea fails to allege he did. I infer that this was the basis of the judgment of the Court of Appeals on this point, and that they regarded it as so clear as not to require any statement of even the grounds of their judgment. This is my inference from the reading of the statement of the case by the reporter, and from the fact that the appellee's counsel, to sustain the demurrer to this plea, referred to *Drake* v. *Mitchel et al.*, 5 East 251, in which it was decided that a plea that a note was *given for the payment and in satisfaction of a debt*, was fatally defective in not averring that the plaintiff had *accepted the note as satisfaction.* In the case of *McCluny & Co.* v. *Jackson*, 6 Gratt. 96, the court held that the closing of an open account by the giving of a negotiable note by the debtor, if it did not extinguish the original cause of action, at least suspended it till the negotiable note became due. The court declined to express any opinion on the question whether such note could, under the circumstances

of that case, be held to be an extinguishment of the original cause of action.

Had they been disposed to have sustained the decision in *Gadsby* v. *McGuire* they would not have left this question open, as the principles laid down in that case rendered it clear that the original cause of action was not and could not be so extinguished. I regard this case as an intimation by the court that they were not then prepared to approve the case of *Gadsby* v. *McGuire*, which they subsequently in effect overruled.

In the case of *Parker* v. *Cousins*, 2 Gratt. 388, which we have already commented upon, the court might properly have approved that case had they been so disposed, but they again omitted to do so.

In the case of *Moses* v. *Trice*, 21 Gratt. 568, it was decided that if money be loaned and a note taken, which from time to time is renewed by other notes given by the debtor payable on time, the creditor may bring suit for the money loaned on the original note. This case gave not the least countenance to the principles laid down in *Gadsby* v. *McGuire*, for there was no pretense that the notes were given and accepted under an express agreement in discharge and satisfaction of the original debt. Of course they could not so operate, and the court treated the right of the creditor in such a case to sue on the original debt as a matter of course, without discussing the subject or citing any authority.

In our State there is no express decision of the question under discussion, yet our Court has in some cases apparently assumed that a new note, whether of the debtor, or one of joint debtors, or of a third person if expressly agreed to be received in discharge and satisfaction of an old debt and actually accepted by the debtor as such, would so operate. Thus in *Dunlap's ex'ors* v. *Shanklin ex'or*, 10 W. Va. 662, it was held that " the taking of a note from the debtor or a note of a third party is no discharge of the debt unless it is expressly agreed between the creditor and debtor that it is an absolute payment

thereof." And in *Pool & Co.* v. *Price*, 9 W. Va. 73, it was held a note will not be regarded as an absolute payment or extinguishment unless it be so expressly agreed." And in the case of *Feamster* v. *Withrow*, 9 W. Va. 327, it was held that in point of fact it did not appear that the new note was accepted in discharge of the precedent debt, and that in the then condition of the case it could not be so held, though what would be the effect of such proof was not decided. In *Miller* v. *Miller*, 8 W. Va. 551, it was held that the evidence showed that the new note was not accepted in discharge of the precedent debt, and it could not therefore so operate. The case of *Feamstvr* v. *Withrow* was again before this court. See 12 W. Va., 611. And it was there held that the proof in the case then did not establish that the new note was given and accepted in discharge of the precedent debt, and could not therefore so operate, and it was held that such "new note will not be considered as a satisfaction and extinguishment of a precedent debt, unless it is clearly proven that it was by agreement of the creditor, accepted and received in absolute satisfaction and extinguishment of the precedent debt, and the burden of proving this is on the creditor."

I have thus far considered the question under discussion as though the giving of the new note had been subsequent to the time when the precedent debt was payable. In point of fact the receipt of a portion of the precedent debt, and the agreement to consider it as discharged, and the giving of the new note for the balance, occurred two days before the original note was due. There is respectable authority for holding that a mere parol agreement without any consideration, will discharge a debt before it is payable. But I am strongly inclined to think, that such a debt cannot be discharged by a parol agreement not based on a valuable consideration, though made before the debt is payable, and that a consideration is equally necessary to discharge a precedent debt, by an express agreement to re-

ceive the note of the debtor in discharge thereof, and the actual acceptance of such, whether the agreement be made before or after the original debt is payable. But in the case before us not only was the new note given in advance of the time when the old note was payable, which was, I think, immaterial, but the creditor received of the debtor $550.00 in cash before his original note was due. The payment of this cash before the original note was due, makes the case very different from what it would have been, had this cash been paid after the original note was due. The part payment of the note, after it was due, would have been but a part performance of an obligation which was on the debtor, and could not have been held by itself to have been any consideration for the agreement to surrender the original note. But the part payment of the note in advance of the time it fell due, was not the part performance of any obligation then upon the debtor-It was an obvious benefit to the creditor to receive this $550.00 in cash before it was due; and being so, it was a valuable consideration which would sustain an express agreement on his part to surrender the original note, or to postpone its collection, or any other agreement the parties chose to make. That the part payment of a debt, in advance of the time it is payable, is a valuable consideration sufficient to support any promise or agreement, is held in numerous cases. See *Uhler* v. *Applegate*, 1 Casey (Pa.) 140; *Greely* v. *Dow*, 2 Metc. (Mass.) 179; *Austin* v. *Dorwin*, 21 Vt. 44. In these cases, the agreement was to postpone the collection of the debt in consideration of a part payment before it was due. But the courts did not base their decisions on the particular character of the promise, but would, from their reasoning, clearly have held that the payment of a part of a debt in advance would be a sufficient consideration for an agreement to regard the entire debt as discharged. The language of the court, in one case, is: "The payment of money before it is due, is both a benefit to the creditor and an inconvenience to the debtor, and in both

respects is a good consideration for a promise." And similar language is used in the other cases.

In the case of *Fitch* v. *Sutton,* 5 East 230, it was decided that the acceptance of a less sum after a debt is due, can not be a satisfaction of the debt, but in pronouncing the opinion of the court, Lord Ellenborough, expressly says, "if the obligor or lessor pay a lesser sum either *before the day* or *at another place* than is limited by the condition and the *feofee receiveth* it, this is a good satisfaction." And it has accordingly been often decided that the part payment of a debt on the day it becomes due though accepted in full satisfaction of the debt, cannot so operate ; but a part payment however small, made before a debt becomes due, though but the day before and acceptance thereof by the creditor as a full satisfaction of the debt will be a full discharge of such debt ; see *Pinnel's case,* 5 Co. R. 117 ; *Brooke et al.* v. *White,* 2 Metc. (Mass.) 283 ; *Smith* v. *Brown,* 3 Hawk. (N. C.) 380, and the same principles were really held in *Row* v. *Hall,* 26 Conn. 392, and these principles were approved in *Sibree* v. *Tripp,* 15 M. & W. 31 ; *Lee* v. *Openheiner,* 32 Me. 254 ; *Goodnow* v. *Smith,* 18 Pick. 414 and *Reid* v. *Bartlett,* 19 Pick. 273, as appears from the opinions delivered, and so far as I know they have never been controverted unless we were to consider *Cumber* v. *Wane,* 1 Stra. 426, as controverting the position, which is doubtful as it is badly reported and, if it does, it has as we have seen been expressly disapproved and overruled. It it is true in the case before us the $550.00 was paid only two days before the original note was due, but this payment will operate just as effectually as a consideration, as it would have done if the payment had been made ten years in advance of the time when the original note might have fallen due, this appears from the above cases ; and in *Uhler* v. *Applegate,* 2 Casey, (26 Pa. St.) 140, the part payment of the debt in that case was made but a single day before it was due, yet the court held that while if it had been made the next day it would

have been no consideration, yet being made before the debt was due it was a valuable consideration on which to base a promise by the creditor. The court say : "Receiving the money a single day in advance of the time fixed by the original bill, may have been a great inconvenience to the debtor and at the same time a corresponding advantage to the creditor. But the amount of inconvenience on the one side and advantage on the other are matters of no importance in a question of this kind. It is sufficient that one or the other existed in any degree however slight."

1877.
Special Term.

Bantz & Co.
v.
Basnett.

There remains to be disposed of, the question whether the acceptance by the creditor as a full discharge and satisfaction of the debt, could be properly given in evidence under the pleadings in the case ? In *Gadsby* v. *McGuire*, 3 Call 237, it was held, that such a defense could not be given in evidence under the general issue ; but to enable such a defense to be relied on, accord and satisfaction must be pleaded. The court refers to no authority but I presume they acted upon the authority of Esp., N. P.; he, in his treatise, page 147, having laid it down thus, and it being referred to in the argument of counsel. But Espinasse does not seem to be sustained by the authorities. In *Paramour* v. *Johnson*, 12 Mod. Rep. 377, it is said, " it is indulgence to give accord and satisfaction in evidence upon *non assumpsit* pleaded ; but that has crept in and is now settled." And in *Strong* v. *King*, 17 Mod. Rep. 538, the court say : "In a debt on a simple contract, it is a good plea that the defendant has given his bond for the debt, and the plaintiff did accept it in satisfaction ; and upon the general issue, that matter may be given in evidence." In *Martin* v. *Thornton*, 4 Esp. 180, which was an action for malicious prosecution, and the plea was, not guilty, Lord Alvanly says ; "What amounts to accord and satisfaction may be given in evidence under the general issue." Lord Holt (referring to the above case) says it was an innovation ; but it has been well settled that whatever goes to show that the plain-

tiff has no cause of action may be given in evidence under the general issue." And the same was held by Lord Ellenborough in *Lane* v. *Applegate*, 1 Stark. N. P. 97 ; 2 C. L. R. 312.

On these authorities I think we may safely say, that the decision in *McGuire* v. *Gadsby* on this point was erroneous, as we have shown it to be on the other point decided in that case. But in the case before us, the general issue was not pleaded. There was no plea filed except the plea of payment, with which was filed a proper bill of particulars, specifying in detail the proposed items of payment, as attempted to be proven. Can the proposed defense be made under this plea? I can see no good reason why it may not. A payment may be otherwise than in money—anything which the parties agree to accept as payment, is payment ; it is so laid down in the text books ; thus Chitty lays it down that by agreement between the parties, payment may be made in goods as well as in money, referring to numerous authorities. See Chitty on Contracts, 9 Eng., 11th Am. ed., vol. 2, p. 1110. Such a defense as that proposed in this case, it was expressly decided in *Ligon* v. *Dunn*, 6 Ired. (N. C.) L.137, could be made under the plea of payment; the court says "Why is not this payment? A payment it is said by Mr. Stephens, (vol. 2 p. 716), may be made in money or its equivalent, and Mr. Chitty, in his treatise on contracts, 750, states that payment may be made in money or in goods, when the latter are received at an agreed price. Thus, if A. hold a bond of B. for $100.00, and the latter deliver to the former a horse valued by the parties at that sum, and the horse is received in discharge of the obligation, it is a payment, although the horse may die the day after its delivery. Payment may be made also in a bill of exchange or a promissory note, although the receipt of neither is itself payment, for neither is money. But when at the time of the transfer, it is agreed between the parties that the draft shall be received in payment, it will discharge the debt as a payment. See *Mayer* v. *Nias*, 1 Bing. 311.

The same is in effect decided in the case of *Hoffman* v. *Walker*, 26 Gratt. 314. The only plea in that case was payment, accompanied as in the case before us, with a bill of particulars showing the exact character of the payment claimed, as in the case before us.

Judge Christian in delivering the opinion of the court says : " Payment of a debt is not necessarily *payment of money* ; but that is payment which the parties contract shall be accepted as payment. Whether under a simple plea of payment, (without notice to the plaintiff how the payment was made) payment may be shown in any other thing than money, is a question which does not arise in this case ; because here with the plea of payment was filed an account showing the nature of the payment relied upon by the defendants, by special agreement with the plaintiff, and that was if the defendant would pay the bond which the plaintiff owed to Leffle, the amount thus paid should be a payment *pro tanto* of the defendant's bond held by the plaintiff. The instruction simply announced the proposition *that if there was such an agreement* to accept Laffle's bond as payment *pro tanto* the defendants were entitled to a credit for the amount due on that bond as a payment. If such an agreement was established it was certainly a good defense to the extent of the amount due on the Laffle bond. " I am, therefore, of the opinion that the defense proposed in this case would properly be made under the plea of payment, accompanied as it was, with a bill of particulars showing the exact character of the payment proposed to be proven.

In the case before us, on its merits, as disclosed by the certificate of the evidence certified to by the court, a new trial ought to have been granted the defendant. The evidence shows conclusively that the $1,000.00 note sued upon was not negotiable paper ; that it became due April 1, 1861 ; that the maker of the note, the defendant, had no notice of its assignment till after it became due ; that two days before it be-

came due, the maker of the note, the defendant, paid to the payee $550.00 in cash and a claim of $50.00 which a third party owed the maker and which the payee of the note agreed thus to settle for such third person and for the balance of the $1,000.00 note with four months interest in advance on such balance that is $408.00, the maker of the note sued on gave the payee his note payable at four months; that in consideration thereof the payee of the note expressly agreed to accept the above in extinguishment of this $1,000.00 note and further agreed to surrender this $1,000.00 note to the maker at an early day. All this is shown by the receipt of the payee of the note, and is fully confirmed by the witness who drew this receipt, who further proves that the reason the maker of this $1,000.00 note, the defendant, did not have this note then surrendered was that the payee of it said he could not then find it and had perhaps left it in Baltimore. There can be no question that there was in this case an express agreement for a valuable consideraation made by the payee to accept this cash and its equivalent paid in advance and this $408.00 note in full satisfaction and discharge of this $1,000.00 note sued upon; yet the jury only allowed the defendant a credit of $600.00. This on the principle I have laid down was clearly wrong. The error was caused by a wrong instruction given by the court to the jury. The first instruction given by the court is unquestionably right. The second instruction was erroneous, it should have been, " that if the jury believe from the evidence that before the note sued on became payable and before the defendant had notice of its assignment to the plaintiffs the defendant paid to the payee in this note, $550.00 in cash, and gave him a claim on Hiram Haymond, of $50.00, which he owed the defendant, and which the payee undertook to settle for him; and also gave to the payee of this $1,000.00 note, a note for the balance due thereon, with four months' interest in advance; that is, the defendant's note for $408.00, payable in four months from that date, and that the

payee of this $1,000.00 note agreed to accept the above in extinguishment of the $1,000.00 note, and to surrender the same, that they must find for the defendant. And further, that all the facts above stated are proved *prima facie* by the receipt dated March 29, 1861, signed by J. H. Haymond, but such receipt may be contradicted or explained by the parol evidence before the jury; and in determining the real facts of the case, the jury must consider, not only this receipt, but the parol evidence in the case."

I agree with Bro. Moore, in his opinion, that the question, whether this cash note, &c. was received in full discharge and satisfaction of the original note, is a question of fact for the jury. See *Powell* v. *Charless*, 34 Mo. 485; *Rayburn* v. *Day*, 27 Ill. 46; *Harris* v. *Lindsey*, 4 Wall. C. Ct. R. 271, 274; *Bedford* v. *Delaine*, 2 B. & A. 210. But it is the duty of the court to instruct the jury as to the meaning and legal effect of the receipt proved in evidence before them; and what weight it is entitled to as evidence before them. The judgment of the circuit court must be therefore reversed, the verdict of the jury set aside and a new trial awarded; and the appellant must recover of the appellees, his costs expended in this Court.

JUDGMENT REVERSED.